CHRISTIAN VON HESSE, as Sole Acting Executor of the Last Will and Testament of JAMES MACKAYE, Deceased, Respondent, *v.* MARIE LOUISE MACKAYE, Appellant, Impleaded, etc.

*Attachment — levy upon a debt evidenced by negotiable bonds, how made — service by publication on non-resident.*

The levy of an attachment, under section 649 of the Code of Civil Procedure, must be made, in the case of a negotiable instrument, by taking the instrument itself into the sheriff's actual custody.

The obligation of a corporation cannot be separated from the negotiable bonds given by it as the evidences of the debt, and in order that a levy should be made the bonds themselves must be actually within reach of the court.

An intangible obligation, evidenced by a tangible bond, is not, apart from the instrument, specific personal property within the meaning of that phrase as used in section 649 of the Code of Civil Procedure.

In such a case, unless the bond itself is within the State, the court cannot order service to be made by publication upon a non-resident interested therein.

APPEAL by the defendant Marie Louise Mackaye from an order made at a Special Term held in the county of New York, and entered in the office of the clerk of the county of New York on the 23d day of May, 1889, denying a motion to vacate an order of publication made in the above-entitled action.

Also an appeal by the same defendant from an order made at a Special Term held in the county of New York, and entered in the office of the clerk of the county of New York on the 18th day of July, 1889, granting a motion to continue a temporary injunction restraining the defendants, the Northern Pacific Railroad Company, the Union Pacific Railroad Company and the Chicago, Milwaukee and St. Paul's Railroad Company, from paying the principal of, or coupons on, certain bonds mentioned in the complaint in this action during the pendency thereof.

The action was brought to recover the possession of some sixty railroad bonds of the defendants, the Northern Pacific Railroad Company, the Chicago, Milwaukee and St. Paul Railroad Company and the Union Pacific Railroad Company.

The complaint alleged that James Mackaye departed this life at the city of Paris, France, possessed of said bonds; that thereafter the

firm of Morton, Rose & Co., without lawful authority, delivered the said bonds into the possession of the defendant Marie Louise Mackaye, who took the same into her possession, wrongfully and without lawful authority so to do, and continued in the possession thereof until shortly after the 27th of April, 1888, when she delivered the same into the possession of the firm of Hottinguer & Co., which latter firm, as the plaintiff was informed and believed, still retained possession of the same at the time of the bringing of the action; that Morton, Rose & Co. held the said bonds in custody, as agent of said James Mackaye, and had no right or authority to deliver the same to the defendant Marie Louise Mackaye.

An order directing service to be made upon Marie Louise Mackaye by publication was granted, and a temporary injunction was granted restraining the defendants, the railroad companies, from paying any portion of the principal or interest on the bonds in question until the determination of the action.

*Noah Davis*, for the appellant.

*George H. Starr*, for the respondent.

BARRETT, J.:

This is not an action *in personam* against Mrs. Mackaye to recover "a sum of money only," as damages for a breach of contract or for the wrongful conversion of, or other injury to personal property. It is, consequently, not an action in which she could be proceeded against by attachment as a non-resident. The case for publication, therefore, depends upon subdivision 5 of section 438 of the Code of Civil Procedure; and the question is, does the complaint show a sufficient cause of action against Mrs. Mackaye with regard to "specific personal property within this State?" The subject of the action is sixty coupon bonds of certain foreign corporations. The plaintiff claims these bonds as part of the estate of his testator, James Mackaye. He avers that they are also claimed by Mrs. Mackaye, the appellant, under an alleged gift from her husband, the said James Mackaye, made in his lifetime. Mackaye died a resident of Paris, France. In the codicil to his will, executed on the 20th day of April, 1887, he declared Paris his residence. The complaint states that he died in

that city, and the plaintiff, in the affidavit upon which publication was ordered, says that he " had spent most of his time there for some years prior to his death." Mrs. Mackaye resided in Paris with her husband, and still so resides. The bonds are in Paris in the possession of bankers there named Hottinguer & Co. There is no allegation or proof that the bonds were ever in this State or that they are payable here. It appears that the plaintiff and Mrs. Mackaye are now litigating their respective claims to these bonds before the French courts. The plaintiff admits that he has intervened there, and it seems to be undisputed that the foreign tribunal has acquired full jurisdiction over the parties and the subject-matter. What, then, it may well be asked, is the plaintiff doing here ? His complaint is framed as a bill in equity. The foreign corporations, the foreign bankers and Mrs. Mackaye are made parties defendants. The prayer is that these foreign corporations, who are said to have offices here for the regular transaction of business, refrain from paying the principal or interest of the bonds ; that a receiver be appointed to collect such principal and interest ; that Mrs. Mackaye be required to interplead concerning her claims, and that it be adjudged that the bonds belong to the estate of the plaintiff's testator. Distrust of the French courts seems to be one of the alleged equities of this bill. The plaintiff, in substance, avers that if the proceedings in France terminate unfavorably to his contention, and if Mrs. Mackaye should thus obtain possession of the bonds, he, as executor, *might* be remediless, and be unable to recover the possession of such bonds for the estate of James Mackaye ; and, further, that if the corporation should pay her either principal or interest, that, too, might be lost to the estate. It is not necessary to consider whether this complaint shows any cause of action against Mrs. Mackaye entitling the plaintiff to the relief demanded. The jurisdiction of the court as to non-residents, proceeded against otherwise than for a money demand on contract, or for specific pecuniary damages, is *quasi in rem*, and the complaint must not only show a sufficient cause of action generally, but a sufficient cause of action with regard to " *specific personal property within the State.*" Indeed, the learned judge at Special Term conceded, and correctly so, that the order of publication could not be upheld if the sixty bonds in Paris were to be treated as the subject of the action. He

sustained the order solely upon the ground that the bonds were only evidences of debt, and that the obligation of the corporations to pay the principal and interest was the real subject of the action. That obligation he held to be "specific personal property within the State," because the corporations had offices here for the regular transaction of business, and because process had been served upon their agents here, resulting in their general appearance in the action. Thus he necessarily held that the *situs* of the corporate obligation was not the locality of the corporate being, but followed its agencies wherever established, and was inseparable, so to speak, from the debtor's person. The underlying objection to this view of the case is, that the bonds, though evidences of corporate obligation, are themselves essentially personal property. They are such both at common law and by statute. Trover could be maintained for their conversion. They could be specifically replevied. They were accounted part of the movable estate of a deceased owner. (Erskine Inst., B. 3, tit. 9, § 4.) Money could be borrowed and liens effected upon them. They passed from hand to hand, upon purchase and sale, by mere delivery. The Code declares them to be "personal property capable of manual delivery," and as such the subject of attachment, the sheriff being required to take them into his actual custody. (Code of Civ. Pro., § 649, subd. 2.) They can be attached in no other manner, being expressly excepted from the provision whereby other obligations, not similarly evidenced, may be attached, namely, by leaving a certified copy of the warrant, and an appropriate notice with the person against whom such demand exists. (Id., subd. 3.) And, further, "evidences of debt" are expressly defined to be "personal property" by the seventh subdivision of section 3343. Then, too, such negotiable instruments are plainly contemplated by the phrase in the section under consideration, "specific personal property," *the title to which* may be affected by the action. That section speaks of a demand of judgment "excluding the defendant from a vested or contingent interest *or lien upon*" this specific personal property within the State; a judgment *enforcing*, regulating, defining or limiting such an interest or lien in favor of either party, "or otherwise affecting *the title* to such property." The purpose of this legislation is apparent, and it produces a reasonable and harmonious system. There is no attempt to drag non-residents into our juris-

diction in money actions, or with regard to pecuniary demands of a strictly personal character. Jurisdiction over *property* within the State is asserted and provided for. If the property of a non-resident is here, it may be attached in an action *in personam*, for money or damages. There the action itself has no relation to the property, yet its sole purpose is the subjection of the property to the demand. If, however, there be no such demand, then the court may proceed *quasi in rem*, though in form *in personam*, to adjudicate upon conflicting interests in specific real or personal property within the jurisdiction. But clearly the *corpus* must be within the State, *the actual thing* upon which the judgment can properly and adequately act. It seems clear that this " *actual thing* " in the case at bar is not the intangible obligation which lies behind the bonds, the mere *jus incorporale*, but the bonds themselves. It is *the title* to these bonds which the complaint questions, not *the title* to the *jus incorporale*. With regard to the corporate obligation to honor its bonds, there is no possible controversy. The corporations do not dispute that obligation, and they are ready to meet it upon the production of the true subjects of the controversy. In our judgment, then, an intangible obligation (evidenced by a tangible bond) is not, apart from the instrument, specific personal property within the meaning of that phrase as used in the section in question. It is the tangible bond, and that alone, which constitutes such property, and unless *that* is alleged to be within the State, the court is without jurisdiction to order publication against a non-resident claimant.

It is not necessary, therefore, to determine whether an ordinary debt, evidenced by no written instrument, follows the *situs* of the debtor, and, so following it into this State, comes within the expression specific personal property, as used in this section. Still less is it necessary to determine that question when applied to the *situs* of a foreign corporation. Doubtless, such debts may ordinarily be attached by the service, in a proper case, of a certified copy of the warrant, with a notice showing what is attached upon the debtor. But that is a very different thing from asserting jurisdiction over conflicting *claims of title to the debt*, and, for that purpose, treating it as specific personal property within the State under section 438. How can the court lay hold of the *corpus* of such a debt. How

enforce interests therein or liens thereon.  The respondent proceeds upon the notion that the body of the debtor is the *corpus* of the debt, or rather, in the present case, the body of the debtor's local agent.

The debt has no *corpus* until collected or otherwise reduced to possession.  By a legal fiction it is given a *situs* for the purpose of regulating transmission and fixing the rights of creditors and others. But it is a mere chose in action.   Any one claiming to own the debt may, it is true, sue the debtor wherever he finds him, but can he follow him in his travels and file a bill in a locality which is neither the domicile of the debtor nor of the rival claimant to the debt, to have it determined who is entitled to be paid, and, when that is so determined, to enforce such payment in favor of the adjudicated owner ?  To this question should be added the possibility of the debtor's denying that he owes the money to either party and contesting with both.

These suggestions suffice to indicate that, if the question depended upon our treating the corporate obligation, which is evidenced by these bonds and not the bonds themselves as the specific subject of the action, it would be by no means free from doubt.   The illustration serves to show that the *corpus* of the property must be actually within reach of the court to be dealt with as the facts and circumstances demand.   Our views are fortified by the principle enunciated in *Bryan* v. *University Publishing Company* (112 N. Y., 382).   The case there made for jurisdiction was, in our judgment, stronger than that presented by the facts now before us.   The order of publication was vacated, although EARL, J., stated in his dissenting opinion that "some of the property at least is within this State." The opinion of the majority, delivered by DANFORTH, J., proceeded upon the ground that, as an assignment of copyrights to a citizen of Massachusetts could not be effectually set aside as fraudulent by the courts of this State, "the impropriety of issuing an order which, if it leads to a judgment, would operate on nothing in the State, and be regarded by nobody out of it, becomes apparent ; " and that the defendant "was entitled to make the motion rather than submit to the hardships of coming into this State to defend the action."  The same doctrine applies here.   The court could not compel the corporations to pay the principal or interest of their bonds to a plaintiff

who had not possession of them. The bonds could be delivered to Mrs. Mackaye by the French courts regardless of our decree, and she could transfer them to a purchaser who would be entitled to principal and interest, equally regardless of our decree. Thus our decree would operate on nothing in the State, and be regarded by nobody out of it. Here there is no question whatever of any part of the property being within the State, and our conclusions are fully supported, even by the dissenting opinion of Earl, J.

The order appealed from should, therefore, be reversed, with ten dollars costs and the usual disbursements, and the motion to vacate the order of publication granted.

Van Brunt, P. J. :

It seems to me that the fact that, if the plaintiff was proceeding against the defendant herein to recover a debt, he could not reach by attachment the debt due from the foreign corporation to the holder of the bonds, the subject-matter of this action, shows conclusively that the title to these bonds cannot be litigated in the courts of this State under the circumstances disclosed in the case at bar.

Section 649 of the Code provides how property is to be attached. It says that a levy under a warrant of attachment must be levied upon a bond, promissory note or other instrument for the payment of money by taking the same into the sheriff's actual custody. The debt represented by those instruments, therefore, cannot be recovered, disregarding these evidences of the debt. That such must be the rule is apparent when we consider the position of the debtor. Suppose he pays a debt represented by a negotiable instrument, as are the bonds in question, even in pursuance of a judicial decree, and a holder of the evidence of the debt having acquired the same before maturity and in good faith, presents the evidence of debt for payment when it falls due, is there any doubt but that the holder of such evidence of debt could enforce payment, and that the payment pursuant to a judicial decree would be no defense? If there is any doubt as to this proposition, then the doctrine that the rights of a *bona fide* holder of a negotiable instrument acquired before maturity are unassailable does not exist, and no person in dealing with such instruments can be sure that he gets any right because of their possession. It is because, in the case of a negotiable

instrument for the payment of money, the evidence of the debt and the debt cannot be separated (except, perhaps, while the instrument is in the hands of the original party and is offered to be surrendered), that the Code requires the levy to be made by the taking of the instrument into actual custody.

If jurisdiction can be acquired in the case at bar because the debtor, the foreign corporation, has an agent here for the transaction of its business, then such jurisdiction can be acquired in a case where two residents of England, neither of whom had ever been in this country, were having a dispute about the ownership of certain bonds issued by an English corporation, which bonds had always been in England, and which dispute arose out of transactions, the whole of which took place in England, simply because the corporation had an agent here for the transaction of its business. The resident of England, without ever having been or being in this country, could cause a suit to be commenced in the courts of this State against his English adversary to determine their dispute as to the title of these evidences of debt, and simply by serving a summons upon the agent of the English corporation in this State, and serving his adversary by publication, confer jurisdiction upon the courts of this State to determine the dispute, as between these two Englishmen, as to the title to these evidences of debt, and thus compel his adversary to submit their controversy to the courts of this State. It is evident that no jurisdiction can be acquired under such circumstances. It may be claimed that the facts above stated are not parallel to those existing in the case at bar, in that the plaintiff herein is a resident of this State. Jurisdiction is not claimed because of the residence of the plaintiff, but because service can be made upon the agent of the debtor; and this element, the only essential one to give jurisdiction in this case, is present in both cases. The debtor is not, in any respect, a necessary party to an action such as this, as the title to these bonds can be determined as well without its being made a party defendant; and it would be singular could the court acquire jurisdiction because the plaintiff had made an unnecessary defendant a party and procured service upon him.

It seems to me that Justice BARRETT has clearly reached a correct conclusion.

Bartlett, J.:

I concur in the views as to the jurisdictional question in this case expressed by the presiding justice and Mr. Justice Barrett, and agree that the order appealed from must be reversed.

Order reversed, with ten dollars costs and the usual disbursements, and the motion to vacate the order of publication granted.

---

Motion to dismiss appeal from order denying defendant's motion to vacate an order of publication.

Barrett, J.:

The plaintiff moves to dismiss this appeal upon two grounds: First. That Mrs. Mackaye has virtually appeared in the action and submitted to the jurisdiction of the court. Second. That her objections to the jurisdiction should be taken by answer or demurrer.

As to the first ground, it is only necessary to say that the court at Special Term, upon due notice to the plaintiff, has extended Mrs. Mackaye's time to appear until after the decision of her appeal from the order upholding the publication. If Mrs. Mackaye had appeared generally in the action, the plaintiff should have opposed that application on the ground upon which he makes the present motion.

The order extending the time to so appear, made after the acts which the plaintiff now claims constituted a general appearance, is conclusive upon that head. But, further, it is entirely clear that none of the acts specified by the plaintiff amounted to a waiver of the objection to the jurisdiction. The Code provides that the defendant's appearance must be made by serving upon the plaintiff's attorney a notice of appearance, or a copy of a demurrer or of an answer. (Code Civil Pro., § 421.) Nothing of the kind was here served, nor did the defendant take any step which could be construed as equivalent to the statutory method of appearance. Indeed, she has protested against the assumption of jurisdiction throughout the proceedings. It is not even pretended that her attorney had authority to appear for her generally. His authority seems to be limited to appearing for the sole purpose of denying the jurisdiction, which he has done at every step in the cause.

As to the second point, the case of *Bryan* v. *University Publishing Company* (112 N. Y., 388) is conclusive. The court there held

that the defendant " is entitled to make the motion rather than submit to the hardship of coming into this State to defend the action."

The motion should, therefore, be denied, with ten dollars costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Motion denied, with ten dollars costs.

---

Appeal from an order of the Special Term granting an injunction *pendente lite.*

BARRETT, J.:

The opinion delivered upon the appeal from the order denying Mrs. Mackaye's motion to vacate the publication proceedings is decisive of this appeal. We have there endeavored to show that the court is wholly without jurisdiction in this action so far as Mrs. Mackaye is concerned. We have also decided that the subject-matter is not within the State of New York. The papers upon this appeal supplement some facts which were wanting upon the application to set aside the order of publication. They show, for instance, that some of the bonds in question were payable in the city of New York. But there are no facts which can give vitality to the order of publication, which was made without authority, and is consequently void. Apart from this question of jurisdiction, the plaintiff's papers make out no case for an injunction. He has submitted himself to the jurisdiction of the courts where the property is situated.

If the proceedings already instituted in the foreign tribunals are technically insufficient to settle the question of right upon the merits, the plaintiff is at liberty to institute fresh proceedings specially directed to that end. His suit here is, upon the facts disclosed in his own papers, unnecessary and oppressive. It is wholly without merit in its present aspect; and the attempt, by bringing in and enjoining the corporations, to force Mrs. Mackaye into a jurisdiction foreign to her domicile and foreign to the *situs* of the property cannot be commended.

The order appealed from should be reversed, with ten dollars costs and the usual disbursements, and the injunction dissolved.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Order reversed, with ten dollars costs and usual disbursements, and the injunction dissolved.