RILEY V. MILLER AND ELISHA M. MOORE, RESPONDENTS, *v.* THOMAS D. JONES, MARY E. JONES AND THE JONES' POSITIVE NUT LOCK COMPANY, IMPLEADED, ETC., APPELLANTS.

*Contract for the manufacture of a patented article — subsequent assignment of the patent by the patentee — action to vacate the assignment — service of a summons on a foreign corporation — service by publication.*

Where the plain object of a contract, made between a patentee and a manufacturer, for the manufacture of a patented article, is to place in the parties thereto the entire beneficial interest in the patent and its proceeds, and the manufacturer is liable to be called on for large expenditures, as security for which he has only the proceeds of the patent or profits in sales, it is not to be presumed that either party intended that the patentee could, whenever and on what terms he chose, dispose of any part or the whole of the patent and thus deprive the other party of his security.

A contract between a patentee and a manufacturer for the manufacture and sale of a patented article, provided that the manufacturer would furnish all necessary machinery and capital, and would proceed with and continue the manufacture of the article during the life of the patent, and that in case he should fail to perform the contract the patentee should be at liberty to sell the article, and all things connected therewith, and each party agreed that he would not dispose of his interest in the business without the consent of the other; it was also pro-

vided that the profits of the business should be divided between the parties in a specified ratio, and that all improvements made by the patentee and patents in foreign countries, except in certain specified countries, were to be used by the parties and the proceeds divided in the same ratio. The manufacture was commenced under the contract, and proceeded with for some time, when the patentee, without the consent of the manufacturer, assigned the patent to his wife and thereafter organized a company in another State, to which company the patentee's wife assigned the patent and it engaged in manufacturing the patented article.

*Held,* in an action by the manufacturer, under the said contract, to set aside the assignments of the patent as in fraud of his rights, that the contract was intended to be, and was, an exclusive license, vesting in the plaintiff the sole and exclusive right to make and sell the patented article for the full term of the patent without any reservation to the patentee, except in case of non-fulfillment by the plaintiff of the terms of the contract, and (it having been found that the plaintiff had performed his part of the contract) that the assignments of the patent should be set aside.

Service, within this State, of a summons upon the secretary of a foreign corporation gives, by force of section 432 of the Code of Civil Procedure, the courts of this State jurisdiction of an action against such corporation, and it is not needful, in order to make such service effective, that the corporation should have any property within this State, or that the cause of action should have arisen here.

*Semble,* that where an order for the publication of a summons is made against a non-resident, under subdivision 1 of section 438 of the Code of Civil Procedure, an attachment against property is not required in order to give jurisdiction, except in case a judgment is sought for money only, as provided by section 1217 of the Code.

In the case above stated the contract for the manufacture of the patented article was executed in this State; the parties thereto lived here at the time of its execution; the business was to be carried on here, and the assignments of the patent, sought to be set aside, were executed and delivered here.

*Held,* that the right to use the patent was property, in its character personal.

That the plaintiff had, under the contract, a property right which, in its origin and use, was within this State.

That the title to this right was affected by the transfers of the patent in controversy.

That the judgment in the present action operated to clear the plaintiff's title from clouds upon it, and hence that the action affected the title to personal property within the State, and, therefore, presented a case for the service of a summons by publication within subdivision 5 of section 438 of the Code of Civil Procedure.

APPEAL by the defendant, Mary E. Jones, from a judgment of the Supreme Court, entered in the Onondaga county clerk's office March 30, 1892, upon a decision rendered at the Onondaga Special Term setting aside certain transfers of a patent; also appeals by the defendants, Thomas D. Jones and the Jones Positive Nut Lock Company, from an order of the Onondaga Special Term, entered

in the Onondaga county clerk's office on April 23, 1892, denying a motion to vacate and set aside the same judgment.

On the 31st of May, 1889, the defendant, Thomas D. Jones, being the inventor and owner of a certain valuable device known as the "Jones Safety Nut Lock," and having previously, in due form, applied to the commissioner of patents for the issuing to him of letters-patent, being about to receive such letters, entered into a contract in writing with the plaintiffs, bearing date May 31, 1889. In this contract, after a recital of the invention and the application for a patent, and an examination by plaintiffs as to its value, and that they were desirous of entering upon the manufacture and sale of the same when letters were issued to Jones, it is agreed by the plaintiffs that they would furnish all necessary machinery and capital for the manufacture and sale of the lock sufficient to fill all orders that they may receive, and would proceed at once with the manufacture and sale, and continue the same for, and during the life of, the patent. They agreed to devote such time and attention to the manufacture and sale as should be necessary for the sucessful carrying on of the business, and they agreed to employ Jones as manager of the manufacturing, and to pay all bills contracted by him relating to said patent. And in case the plaintiffs did not perform all the covenants on their part to be performed, or in case they should abandon or fail to proceed with the manufacture and sale, and refuse, upon demand of Jones, to proceed with the manufacture of the same, then the agreement should be void, and Jones be at liberty to manufacture and sell the said lock, and all things connected therewith, to and with whom he should see fit, the same as if the agreement had not been made. The plaintiffs also agreed that they would not sell, or in any manner dispose of, or transfer their or either of their interest in said business, in whole or in part, without the written consent of Jones, and he agreed that he would "not sell or transfer, or in any manner dispose of his interest in said business without their like consent," and in case either, with the consent of the other, should sell or dispose of the same, it was agreed that the plaintiffs should receive one-third of the net proceeds of the sale, and Jones two-thirds. Jones agreed to devote his time and attention to the manufacture of the lock, and to enter the employ of the plaintiffs, and to manage and oversee the manufacture of the same,

and he also agreed that he would "not allow or permit any person or persons, firm or firms, corporation or corporations to manufacture said lock, but that the same shall be manufactured exclusively by the parties of the first part, and that he will in no manner be inter_ested in the manufacture of it by or with any other persons. This covenant, however, is not to be so construed as to compel the party of the second part to bring actions to restrain parties from infringing on the same unless the parties of the first part shall bear one-half of the expense of such action or actions."

The net profits after deducting all expenses incurred by either relating to the business were to be divided, one-third to the plaintiffs and two-thirds to Jones. If, for any reason, Jones was unable to attend to the duties of the business, he agreed to furnish some one to take his place and pay the expense thereof out of his share of the profits. All improvements made by Jones upon the lock were to be used by all the parties, and all patents in foreign countries, except in certain named countries, were to be used by the parties, and the proceeds relating to the same be divided in the ratio above stated.

Letters patent were issued to Jones on November 12, 1889, and the plaintiffs and Jones entered upon the performance of the contract at Syracuse where the contract was executed and where all the parties resided. In the complaint it is alleged, among other things, that such manufacture continued down to February, 1891, and that plaintiffs invested therein $10,000 upwards and over and above what they had received; that on 24th of October, 1890, Thomas D. Jones, in fraud of the rights of the plaintiffs, executed and delivered to his wife the defendant, Mary E. Jones, an assignment of the said letters-patent and all his interest therein, which assignment was recorded in the patent office January 15, 1891, and that Mrs. Jones had full notice of plaintiffs' rights; that thereafter Thomas D. Jones went to Chicago and organized the corporation the "Jones Positive Nut Lock Company," under the laws of the State of Illinois, and to this corporation Mrs. Jones on the 10th of March, 1891, assigned the patent; that all this was done with the intent to deprive the plaintiffs of their rights, and that Thomas D. is about to remove to Chicago and refuses to assist the plaintiffs in the business, and the new corporation is engaged in manufacturing the lock; that Thomas D. is

the owner of 998 out of 1,000 shares of the stock, and the plaintiffs are excluded from all interest therein; that the corporation had knowledge of plaintiffs' rights.

The defendant, Mary E. Jones, is the only one who answers. Among other things, she denies the fraud, and alleges that she took the assignment to secure her for advances made to her husband.

By the judgment, it is adjudged that the agreement of May 31, 1889, was intended to be and was an exclusive license vesting in the plaintiffs the sole and exclusive right to make, use and vend the patented article for the full term of the patent without any reservation to Jones, except in case of non-fulfillment by plaintiffs of the terms and conditions of the agreement, and Jones had no right to assign the patent to Mrs. Jones or to the corporation; that the assignment to Mrs. Jones, and from her to the corporation, be set aside and vacated as in fraud of the rights of plaintiffs; that Thomas D. Jones and the corporation be restrained from conveying the letters-patent to any other person or corporation; that the plaintiffs recover of Thomas D. Jones, Mary E. Jones and the said corporation the costs of the action.

Upon the trial the defendants, Thomas D. Jones and the Jones Positive Nut Lock Company, appeared specially and objected to the rendering of any judgment against them, and after the judgment was entered they moved at Special Term to set it aside, the motion being based upon the judgment-roll, and the case and exceptions proposed in the case. The order appealed from by them is the one made denying this motion.

*Homer Weston*, for the appellants.

*Ceylon H. Lewis* and *C. W. Smith*, for the respondents.

MERWIN, J.:

The trial court, in substance, found that the plaintiffs had performed their part of the contract; that, under it, they were entitled to have the title of the patent remain in Thomas D. Jones, and that the transfers to Mrs. Jones and to the corporation were without the consent of plaintiffs, and were in violation of their rights. Mrs. Jones appealing from the judgment, takes issue upon all these propositions. They are the main ones upon the merits.

The trial court was, I think, correct in its construction of the con-
tract. Its plain object was to place in the two parties to the contract
the entire beneficial interest in the patent and its proceeds, except
as to certain specified countries. The fact of this exception indi-
cates the intent. The plaintiffs were likely to be called on for large
expenditures as security for which they had only the proceeds of the
patent or profits in sales. It would hardly be reasonable to suppose
that either party then intended that the patentee could, whenever,
and on what terms he chose, dispose of any part or the whole of the
patent, and thus practically deprive plaintiffs of their security.

Whether the plaintiffs had performed upon their part, and whether
the transfers were without the consent of plaintiffs, and, therefore,
in violation of the contract, were, upon the evidence, questions of
fact, and upon those the conclusions of the trial court should not be
disturbed. Some of the allegations in the complaint were quite
general, but no objection upon this basis was made. There is no
question about the right of a State court to set aside such assignments.

But it is claimed that the court had no jurisdiction to render the
judgment by reason of the non-residence of the corporation and of
the defendant, Thomas D. Jones. No defense upon this basis is
set up. Assuming, however, that the appellant is in a position to raise
the question, the case shows that service of the summons and com-
plaint was made upon the defendant, the Jones Positive Nut Lock
Company, by service within the State upon the secretary of the
company. This method of service is authorized by section 432 of
the Code and operates to give jurisdiction to the court, and it is not
needful, in order to make the service effective, that the corporation
should have any property within the State, or that the cause of
action should have arisen therein. (*Pope* v. *Terre Haute C. M.
Co.*, 87 N. Y., 137; *Gibbs* v. *Queen Ins. Co.*, 63 id., 114.) In the
Pope case it is said that a judgment against a corporation in an action
so commenced will be valid for every purpose within this State.
In the Gibbs case it is said that such action and judgment should be
general in character, not directed against any particular property.
But it is suggested that the evidence does not show the legal exist-
ence of the corporation, or that the person served was secretary.
There is evidence that tends to show those facts, and it is found
upon the request of the appellant that the corporation was in exist-

ence at the commencement of this action, and that after the organization of the corporation Anderson (the person served) was elected secretary of the company.

Thomas D. Jones was served by publication under section 438 *et seq.*, and it is claimed that the service was insufficient to give jurisdiction, because no attachment was issued and the property to be affected was not, as the appellant claims, within the State. The order for publication was made both under subdivision 1 and subdivision 5 of section 438. If made under subdivision 1, there would seem to be no requirement for an attachment, except in case a judgment was sought for money only (§ 1217 of Code), which is not this case.

Assuming, however, that the order of publication can rest only upon subdivision 5 ( *Von Hesse* v. *MacKaye*, 55 Hun, 365 ; affirmed 121 N. Y., 694), the question is whether a case is presented that is fairly within that subdivision. That subdivision reads as follows :

" 5. Where the complaint demands judgment that the defendant be excluded from a vested or contingent interest in or lien upon specific real or personal property within the State; or that such an interest or lien in favor of either party be enforced, regulated, defined or limited, or otherwise affecting the title to such property."

The counsel for appellant says that " while the complaint states a cause of action concerning specific personal property in this State, the proof for judgment merely fails to establish a cause of action." The point, I suppose, is that under the evidence the property to be affected is not within the State.

It is to be observed that the subdivision is not limited to chattels, but the more extensive term is used "personal property." The contract between plaintiff and Jones, the construction of which was in issue as well as the rights of plaintiffs under it, was executed in this State and all parties then lived here and the business was to be carried on here. The assignments which were sought to be set aside were executed and delivered here. They so appear upon their face. The plaintiffs' cause of action, therefore, accrued here. Where the patent, the instrument itself, was at the time does not appear, except it may be inferred that it was then at Syracuse, where the assignments were executed. Where it was when this suit was commenced does not appear. The patent itself was not

the invention, but evidence that the party had, under the law, a monopoly. The right to use is property (*Gillett* v. *Bate*, 86 N. Y., 93), and in its character it is personal. The plaintiffs, under their contract, had a property right and in its origin and use it was within this State. The title of this was affected by the transfers in controversy and the judgment operated to clear their title from the clouds upon it. In a certain sense their contract was a lease to run during the life of the patent and the suit and judgment were to remove impediments to the exercise by plaintiff of their rights.

In view of the circumstances of this case it should, I think, be held that the action affected the title of personal property within the State.

The counsel for the appellant claims error in some rulings at the trial, but we find in them no sufficient ground for reversal. The appellant claimed a trial by jury, but clearly the suit was in equity, and no motion had been made to settle issues. The answer did not put at issue the existence of the corporation. (Code, § 1776.) It follows that no sufficient ground for reversal of the judgment appears.

The appeal from the order brings up substantially the same question as to the validity of the service on Thomas D. Jones by publication. Nothing further need be said as to the validity of the order. A further question, however, is raised as to the sufficiency of the proof of service. After the order was made the papers were served personally on Jones, without the State. The affidavit of such service appears to have been made before a notary public The appellants claim that the clerk's certificate as to the official character of the notary was not sufficient to entitle the affidavit to be read under section 844 of the Code. That section provides that an affidavit may be taken without the State " before an officer authorized by the laws of the State to take and certify the acknowledgment and proof of deeds to be recorded in the State; and when certified by him to have been taken before him, and accompanied with the like certificates as to his official character and the genuineness of his signature, as are required to entitle a deed acknowledged before him to be recorded within the State, may be used as if taken and certified in this State by an officer authorized by law to take and certify the same." The clerk's certificate in this case, instead of stating that the notary was authorized by the laws of the State

to take and certify the acknowledgment and proof of deeds, stated. that he " was  *  *  *  duly commissioned, sworn and acting as such, and authorized to administer oaths." In other respects, the certificate appears to be regular.

This objection, as the record shows, was not raised on the motion made by these defendants, or on the trial. If it had been, it might. have been obviated. No suggestion was made that Mr. Jones had not, in fact, been served without the State. On the contrary, it is very apparent that all parties assumed that such service had been made, and the controversy was as to the sufficiency of such service, there being no attachment, and the property not being, as defendants claimed, within the State. The answer of Mrs. Jones was for the benefit of all the defendants, and was so stated by the attorney who appeared specially for them at the trial, for the purpose of objecting to any judgment being rendered against them. The motion being made upon the case and exceptions, as well as on the judgment-roll, the whole case was before the Special Term upon making the order. The defect in the certificate, if one existed, was such that it could be cured by producing on the appeal a proper certificate. (*Jarvis* v. *Sewall*, 40 Barb., 450.)

I think the objection is not available. It follows that the order should be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Orders affirmed, with ten dollars costs and disbursements.

Judgment affirmed, with costs.