MURPHY v. FRANKLIN SAVINGS BANK IN CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. April 16, 1909.)

1. BANKS AND BANKING (§ 154*)—DEPOSITS—ACTIONS—PARTIES.

   Where a wife, upon her marriage, had her deposit at a bank transferred from her individual account to the joint account of herself and husband, so that the signatures of both were required to withdraw funds, the husband had such an apparent interest in the deposit that he should be made a party to an action to compel the bank to pay it.

   [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 154.*]

2. PROCESS (§ 96*)—SERVICE BY PUBLICATION—SUFFICIENCY OF AFFIDAVITS.

   Affidavits for an order for service of summons by publication alleged that the defendant sought to be served had gone to the Klondike; that plaintiff had heard from him on several occasions; that the last information concerning his whereabouts was in a letter from a third person, stating that defendant was at a certain place in Alaska; that plaintiff's attorney wrote to the postmaster there, and to one at another place, receiving no reply to one letter, and being informed by the other postmaster that he could not give any information. *Held* that, in view of the fact that postmasters are not at liberty to disclose addresses of people in the absence of special circumstances which were not shown to exist, the affidavits did not show a change of address from the one given plaintiff in the letter, but showed an address of defendant where it was probable that matter duly mailed to him would be received by him, and hence

were not sufficient to satisfy a judge that plaintiff could not with reasonable diligence ascertain the place where defendant would probably receive matter transmitted through the post office, necessary under Code Civ. Proc. § 440, so as to justify dispensing with service by mail and the ordering of service by publication.

[Ed. Note.—For other cases, see Process, Dec. Dig. § 96.*]

Houghton, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Mary Murphy against the Franklin Savings Bank in the City of New York, impleaded with Patrick Murphy. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and HOUGHTON, JJ.

Wilson M. Powell, for appellant.

Lincoln McCormack, for respondent.

LAUGHLIN, J. I am of the opinion that the judgment should be reversed, upon the ground that jurisdiction of the defendant Patrick Murphy was not acquired by the service by publication. The action is to recover the balance of a fund on deposit with the appellant to the credit of the plaintiff and of the defendant Patrick Murphy. The passbook indicates that it was a joint account; that the signature book of the bank, in which the signatures of the parties were entered at the time the account was opened, contains the entry, following the signatures and information concerning the parties required by the rules and regulations of the bank, as follows: "Both signatures required to draw."

The balance on deposit at the time the action was brought was the sum of $3,484.44. Prior to the opening of this joint account, the plaintiff had the sum of $1,223.08 on deposit to her credit with the appellant. On the 29th day of April, 1891, after plaintiff married the defendant Patrick Murphy, they both went to the bank, and she authorized the transfer of her individual account to their joint account. She testified upon the trial that she supposed that either of them, on the production of the bank book, could draw on the account; but she also testified that she knew that her money was transferred to the joint account, and that the signatures of both herself and her husband would be required when money was to be withdrawn. The president of the appellant was permitted to testify, without objection or exception, that, although he did not superintend the transfer of the account, he knew from the records of the bank that it was changed to a joint account, and that the signatures of both were required to withdraw funds. It would seem that additional deposits to the credit of this account were made; but it does not appear that any money was withdrawn. In these circumstances, it is evident that the defendant Patrick Murphy had an apparent interest in this account, and that he should be a party to any action by which the appellant is to be required to pay it over, in order that it may be protected against a subsequent action by him in which other facts may

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be proved tending to establish that he has an interest in this fund. He was, therefore, properly joined as a party defendant, and before trial or judgment service of process should be made upon him, by which he will be foreclosed from asserting any claim against the appellant on account of the fund.

I think that the moving papers satisfactorily show that, in the exercise of due diligence, personal service could not be made upon him within this state; but, on the other hand, I am of opinion that the order, in so far as it attempts to adjudicate that the affidavits were sufficient to satisfy the judge that the plaintiff could not "with reasonable diligence ascertain the place or places where the defendant would probably receive matter transmitted through the post office," as provided in section 440 of the Code of Civil Procedure, and dispense with service by mail, was without evidence to support it, and therefore void. The question having been raised directly in the action, the court, perhaps, is not confined to an adjudication as to whether the proof was sufficient to sustain the judgment against collateral attack by the defendant Murphy, but may say that final payment should not be entered on unsatisfactory proof dispensing with service by mail. If so, then it is very clear, from the testimony of the plaintiff given upon the trial, that she knew from a letter which she had personally received from her husband, in answer to one which she had mailed to him through a third party some three or four years before the trial, that he was in Cleary City, Alaska, or Seattle, Alaska, and that he might contemplate asserting a claim to this fund, because, according to her testimony, she had requested of him and he promised to forward to her a power of attorney to authorize her to receive this account, which he never did. This precise information was not contained in the affidavit which was presented to the judge who dispensed with service by mail.

The order for service by publication was based upon the affidavits of the plaintiff, her attorney, and of one Fay. These affidavits showed that the defendant Patrick Murphy had gone to the region known as "the Klondike"; that the plaintiff had heard from him on three or four occasions, but did not remember from whence the letters were written; that the last information concerning his whereabouts was contained in a letter which she received from a person in Vancouver, British Columbia, in the month of June, 1906, stating that his address at that time was Cleary City, Fairbanks, Alaska. The affidavit contained nothing tending to show any change in his address. It was alleged in the complaint, also, that in June, 1906, plaintiff received a letter from a party in Vancouver, stating that her husband's address at that time was "Cleary City, Fairbanks, Alaska." It appears to be asserted on this appeal, for the first time, in the brief of counsel for plaintiff, that Cleary City and Fairbanks are two different places, and that together they did not constitute a proper post office address. This was not explained in the complaint or affidavits, nor upon the trial, and the court should not now be called upon to speculate as to whether that was a proper post office address in June, 1906, or whether a letter so addressed would have reached the plaintiff. If this was a post office designation at that time, although Cleary City

and Fairbanks are two separate post offices now, that is of no consequence; for the change in the name of the post office should have been cleared up by the affidavits, and, even if Cleary City and Fairbanks were separate post office addresses at that time, still that would not have justified dispensing with service by mail, but would have required that the papers be mailed to the plaintiff at each post office, for it would be apparent that a mistake had been made as to one or the other.

No explanation is offered as to why the plaintiff did not seek the address of her husband from the party through whom she had previously forwarded mail to him, or from the party who in June, 1906, gave her his address. It was merely shown that a letter written by the plaintiff's attorney to the postmaster at Cleary City and Fairbanks, Alaska, asking for the address of the defendant Murphy, was unanswered, and that an answer was received to a similar letter written by him to the postmaster at Vancouver, British Columbia, to the effect that the postmaster could not give the information. These affidavits afforded no evidence of a change of address by the defendant Murphy. It is well known that postmasters are not at liberty to disclose the addresses of people unless special circumstances are presented; and, as it does not appear that any special circumstances were presented which would justify the postmaster in disclosing the information, it is of no importance that in the one instance the letter was not answered, and in the other that an answer was received which may well have been intended to mean merely that the postmaster was not at liberty to divulge information on the subject.

Assuming, therefore, without deciding the question, that in passing upon the sufficiency of the affidavits upon which the application for publication was made, on a review of the trial in the action, we are to be guided by the principle that would be controlling in a collateral attack upon the judgment, still I am of the opinion that the affidavits showed an address of the defendant Murphy where it was probable that matter duly mailed to him would be received by him, and that, therefore, the service by mail could not properly, and should not, have been dispensed with.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except HOUGHTON, J., who dissents.

HOUGHTON, J. (dissenting). I think this action is properly brought, and that the order of publication against Patrick Murphy properly dispensed with mailing of notice to him. It is undisputed that at the time the plaintiff was married to the defendant Patrick she had on deposit with the defendant savings bank $1,263 of the money now on deposit, and that she herself made all the deposits from her own money thereafter. It stands, therefore, upon the undisputed proof, that notwithstanding the form of the deposit she is the owner of all the money, and that she at all times has been in sole possession of the bank book. The deposit being in the name of Patrick and Mary Murphy, it was unimportant that on the bank signature book an official had written it was not to be drawn except upon the signatures

of both. The form of the deposit would indicate on its face that both must draw, and that one could not do it alone. Notwithstanding this fact, it appearing that all the money belonged to the plaintiff, she has the right to it as against a formal joint depositor.

The recent case of Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, is express authority for the proposition that the actual owner of money on deposit in a savings bank, notwithstanding the particular form in which the deposit is made, is entitled to the money on proving ownership; and also is express authority for the proposition that an equitable action may be maintained to establish ownership. Such is the form of the present action, and the only persons interested in the deposit are parties thereto. I do not understand the defendant bank to claim that such an action is not maintainable. Such a proposition arose only in this court. That it is maintainable seems to me too plain for discussion. The only question which the bank does urge is whether the defendant Patrick could be brought into court by substituted service, and, if he could, whether the provision of the order of publication dispensing with mailing of notice was justified. I think an order could issue, and that the dispensing with mailing was justified, and that the judgment should be affirmed.

Section 438, subd. 5, of the Code of Civil Procedure, provides that a defendant may be brought into court by substituted service, "where the complaint demands judgment that the defendant be excluded from a vested or contingent interest or lien upon specific real or personal property within the state, or that such an interest or lien in favor of either party be enforced, regulated, defined, or limited, or otherwise affecting the title to such property." While technically the relation between a bank and its depositor is that of debtor and creditor, in a broader sense the bank holds the money for the depositor. Especially is this true of a savings bank. I think a deposit of a specific amount of money in a bank can fairly be said to be a fund the title to which, or an interest in which, can be the subject of litigation and adjudication. If so, it comes within the provisions of the Code permitting substituted service upon a defendant who is sought to be excluded therefrom or his right therein defined or limited.

Orders of publication were held improper in Bryan v. University Pub. Co., 112 N. Y. 382, 19 N. E. 825, 2 L. R. A. 638, and in Von Hesse v. Mackaye, 55 Hun, 365, 8 N. Y. Supp. 894, affirmed 121 N. Y. 694, 24 N. E. 1099, on the ground that the personal property in controversy was not within this state. In Chesley v. Morton, 9 App. Div. 461, 41 N. Y. Supp. 463, the order was upheld on the ground that the action partook of the nature of one in rem.

The plaintiff also asks that it be adjudged that she is the sole and absolute owner of the deposit, and that the claim of the defendant Patrick thereto, if any, be determined. It is true that she also asks that, if it be determined that she be the sole owner and that Patrick has no interest therein, it be adjudged that the bank pay the same to her. It seems to me that it is an action to determine a claim to personal property situated within the state. It would be a very monstrous failure of justice, not only in the present case, but in many similar ones, if the actual owner of a joint deposit could not have it ad-

judged that he was the owner, where the joint depositor had disappeared or chanced to be a nonresident upon whom substituted service could not be made. If the action is one, as it seems to me it is, in which an order of publication against a nonresident defendant was proper, then I think the judge granting the order of publication was entirely right in dispensing with mailing.

Section 440 of the Code prescribes that, if the judge granting the order be satisfied from the affidavits that the plaintiff cannot with reasonable diligence ascertain a place or places where the defendant would probably receive matter transmitted through the post office, he may dispense with the deposit of any papers therein. The affidavits show that the defendant Patrick disappeared in 1898; that plaintiff, although she heard from him or three or four occasions, had not heard about him since June, 1906, when some third person, at Vancouver, British Columbia, wrote her that her husband Patrick at that time was at Cleary City, Fairbanks, Alaska. The order of publication was granted in May, 1908. The affidavits show that every reasonable effort was made and all possible inquiries instituted to ascertain whether or not service could be made upon him in this state, and service was found impossible. Thereupon one of plaintiff's attorneys wrote to the postmaster at Cleary City and at Vancouver, British Columbia, making inquiries concerning Patrick. The postmaster at Vancouver replied that he could not give the information asked for, and the postmaster at Cleary City did not reply at all. His sister had not heard from him, and knew nothing of him, except some four years prior she had received a letter from him from some place in Alaska, at what place she did not know, and she believed that he was in the region known as "the Klondike" in British America or Alaska. Upon this proof the judge granting the order of publication was entirely warranted in coming to the conclusion that it would be a futile thing to require mailing of a notice.

In Kennedy v. Lamb, 182 N. Y. 228, 74 N. E. 834, 108 Am. St. Rep. 800, the nature of the evidence required to be presented to the judge granting an order of publication is commented upon, and it is held that any evidence having a legal tendency to show compliance with the statute, even if inconclusive, would warrant the exercise of judgment, and thus confer jurisdiction to make the order, and, even if the judge reached a wrong conclusion upon the facts presented, so that his order would be set aside on direct attack by motion to vacate, still, if he had some legal evidence to act upon, the order would be protected from collateral attack after the entry of judgment. To the same effect is Evans v. Weinstein, 124 App. Div. 316, 108 N. Y. Supp. 753.

The question here under consideration is, not whether the order would have been set aside on a direct attack, but whether the court obtained any jurisdiction whatever to make it, dispensing with a service by mail. Facts insufficient to sustain an order on a direct attack may be entirely sufficient to uphold the jurisdiction of the judge making it. Belmont v. Cornen, 82 N. Y. 256; Donnelly v. West, 66 How. Prac. 428; Walker v. Reiff, 13 Wkly. Dig. 331. I have very grave doubts whether, if the judge had jurisdiction to make the order of

publication itself, a wrong direction dispensing with mailing would make it void. In Spaus v. Schaffner (Sup.) 2 N. Y. Supp. 189, Mr. Justice Ingraham held that an order of publication which directed mailing to the defendant addressed to him at New York City did not vitiate the order. If a direction in an order of publication against a nonresident to mail the notice to him to a place situated within the state does not vitiate the order, I cannot see how dispensing with mailing could have that effect.

Confessedly sufficient facts were presented to the judge granting the order of publication in the present case to confer jurisdiction upon him to make an order of publication. The only complaint respecting the order is that it dispensed with mailing. Having jurisdiction, and having some facts upon which he could properly adjudge that it was improbable that the defendant would receive notice by mail, the order cannot be said to be void.

The defendant bank does not claim to be the owner of the money. All it desires is that it be protected against payment a second time. I think the judgment gives such protection, and I therefore vote to affirm it.