TWELL, respondent, *v.* TWELL ET AL., appellants.

APPEAL— *Review of evidence— New trial.*— The supreme court will not review the evidence, unless on appeal from an order on a motion for a new trial.

JUDGMENT FOR ALIMONY — *Creditor's bill lies to enforce — Fraudulent conveyance.*— The plaintiff obtained judgment divorcing her from her husband, who was ordered to pay her $50 per month as alimony during the period of her natural life, the payment of which the court required him to secure by executing a bond; instead of so doing, and in violation and contempt of such order, and for the purpose of cheating and defrauding the plaintiff of her alimony, he secretly sold all his property to the co-defendants, who purchased the same with knowledge of the decree, and for the purpose of assisting him to defraud the plaintiff. The husband thereupon left the territory, and his whereabouts are unknown. *Held,* that the plaintiff might maintain an action, in the nature of a creditor's bill, to have such conveyance set aside without having first procured execution on the award of alimony.

CREDITOR'S BILL— *Divorce proceedings are equitable.*— A creditor's bill may be filed to enforce a decree in equity; and under the Revised Statutes, sections 508, 514, proceedings for divorce and alimony are of chancery jurisdiction.

*Appeal from Second District, Deer Lodge County.*

THE opinion states the facts.

SHARP & NAPTON and KNOWLES & FORBIS, for the appellants.

DIXON & WHITEHILL, for the respondent.

WADE, C. J.   This is an appeal from a judgment.  There was no motion for a new trial.  The record contains the evidence, and one of the questions presented by the appellants is that the findings of fact by the court are not warranted by the evidence.  There was a motion entered to strike the evidence from the record, for the reason that as there was no motion for a new trial, or statement on such motion, the evidence could not be examined on this appeal.  This motion is well taken.  We have repeatedly held that the evidence could not be reviewed unless brought here

| | |
|---|---|
| 6 | 19 |
| 7 | 106 |
| 7 | 284 |
| 7 | 285 |
| 9 | 588 |
| 6 | 19 |
| 15 | 316 |
| 9* | 537 |
| 33* | 83 |
| 6 | 19 |
| 18 | 252 |
| e18 | 255 |
| 6 | 19 |
| 36 | 458 |
| 36 | 462 |

on a motion for a new trial. The case of *Chumasero* v. *Viall*, 3 Mont. 376, is in every way similar to this one in this respect, and it is not necessary to repeat that decision, or to review the authorities upon which that case rests. The theory is that before the testimony can be reviewed here, the lower court must have had an opportunity to have reviewed its own findings and decisions, and to have corrected its own errors, and this, so far as the testimony is concerned, can only be done on motion for a new trial.

Our inquiries, therefore, are limited to questions arising upon the judgment roll, and these are: Did the court err in overruling the demurrer to the complaint? Does the complaint support the judgment? Are the findings of fact and the admissions of the pleadings consistent with the judgment?

It appears by the allegations of the complaint that on the 17th day of December, 1883, the respondent — plaintiff — obtained a decree in her behalf, dissolving the bonds of matrimony between herself and Richard Twell, in which it was ordered, adjudged and decreed that said Richard Twell pay to respondent, as and for her alimony, the sum of $50 per month, during the period of her natural life, or until the further order of the court, the first payment to be made on the day of the date of the decree, and the subsequent payments on the same date of each month thereafter.

It was further ordered and adjudged in said decree that within fifteen days after the date thereof the said Richard Twell give security for the payment of said alimony by executing to the respondent, and filing in the court, a bond with two or more sufficient sureties, in the sum of $5,000, conditioned for the payment by the said Richard Twell, to the respondent, said sum of $50 per month as in the said decree ordered to be paid. It was further ordered and adjudged that upon the failure of said Twell to give said bond as required, that he be adjudged in contempt of court, and that such proceedings thereupon be had to enforce and secure the payment of said sums allowed as alimony as might

be necessary and proper, and according to the practice of the court in such cases.

It further appears that said Richard Twell has failed to obey said decree, in that he has not paid said monthly instalments for alimony, and has failed to give the security required, but on the contrary has departed the territory without making any provision whatever for the payment of said alimony as provided in said decree, and that his whereabouts are unknown. The complaint then sets forth the amount of alimony due and unpaid at the filing thereof. It is further, in substance, alleged that on the 22d day of December, 1883, the said Richard Twell was the owner of certain real estate and personal property amounting to the sum of $6,200; that on said day, and after the entry of said decree of divorce and alimony, the said Twell, in contemplation of a departure from the territory for the purpose of evading the payment of said alimony, and to avoid the process of the court for the enforcement of said decree, made a pretended sale and assignment of his said property to the appellants, defendants Joseph Lodge and Samuel Beaumont, by virtue of a certain deed or instrument of conveyance, which is set forth in the complaint; that the property so sold and assigned is of the value of $6,200; that said sale and assignment was fraudulent and void as against the respondent, and was made for the purpose of delaying, hindering and defrauding her, by putting it out of her power to enforce her rights under said decree; that Lodge & Beaumont knew of the said decree, and knew that Twell was disposing of his property to evade the payment of said alimony; that they bought said property to enable Twell to leave the country, and to prevent the decree for alimony from being enforced, and to defraud the respondent of her rights under the decree; and that Twell has no other property within the jurisdiction of the court, out of which said decree for alimony can be satisfied in whole or in part.

There was a demurrer to the complaint overruled, and an answer by appellants Lodge & Beaumont, in which sev-

eral of the allegations of the complaint were specifically denied, and a trial before the court on the issues thus raised, the defendant Richard Twell making default. Upon the trial the court made the following findings of fact:

1. That the property sold by defendant Twell to defendants Lodge & Beaumont was, at the time of said sale, of the value at least of $4,200, and that defendants Lodge & Beaumont have realized from the personal property sold since said sale the sum of about $2,500, and still have all the real estate and personal property, of the value of at least $6,000, in their hands.

2. That the said sale to said Lodge & Beaumont was made by defendant Twell, with the intention and for the purpose of hindering, delaying and defrauding plaintiff in the enforcement of the decree mentioned in the complaint, and in the collection of the money therein ordered to be paid by defendant Twell.

3. That at the time of said sale, defendant Twell and said Lodge & Beaumont were, and for eight or ten years before had been, friends, and were fellow-countrymen, all being of English birth.

4. That at the time of said sale said Lodge & Beaumont knew of the decree mentioned in the complaint and of the liability of defendant Twell thereunder.

5. That at the time of said sale said Lodge & Beaumont put the valuation of $1,200 upon the real property sold, but made no estimate of the value of the personal property; and did not estimate the notes or county scrip sold; and did not know how many bonds they were to receive.

6. That at the time of said sale said Lodge & Beaumont knew that said defendant Twell could not give the bond required by the decree, and that he was at the time selling, or endeavoring to sell, his other personal property, besides that sold to Lodge & Beaumont.

7. That said defendant Twell really left Montana territory within two or three days after the sale to Lodge & Beaumont, and has never since been within said territory,

and did not leave, and has not now, in said territory, any personal property whatever.

8. That the terms of the sale from said defendant Twell to said Lodge & Beaumont were, that they should pay Twell $3,000 for the whole property; that they paid said Twell at the time $1,900 in money and $100 by giving said Twell credit for that amount, which he owed them, and agreed to pay the other $1,000 when able, no definite time for the last payment being agreed upon.

9. That after said Twell had left the country, and about January, 1884, said Lodge & Beaumont paid $500 to Thomas L. Napton, on an order from said defendant Twell.

10. That afterwards, and after the commencement of this action in October, 1884, at the request of defendant Twell, by letter to defendant Lodge, said Lodge went to Bismarck, in Dakota territory, and there met said Twell and paid him the balance of $500 on said sale.

11. That at the time said Lodge & Beaumont paid said order to said Napton they knew that defendant Twell had absconded and sold his property to defraud plaintiff, and they knew the same facts, and had been served with summons in this action before they made payment at Bismarck, Dakota territory.

12. And from all the circumstances and facts in the case, defendants Lodge & Beaumont, as men of ordinary prudence and sagacity, had reasonable cause to believe and know and suspect at the time of said sale to them, that said Twell made said sale with intent to hinder, delay and defraud plaintiff in the enforcement and collection of her decree herein of the money due and to become due therein.

13. That said sale was fraudulent and void, and made with intent to delay, hinder and defraud plaintiff as aforesaid.

Thereupon, the court adjudged said sale and assignment to Lodge & Beaumont fraudulent and void, and ordered that all the property of Richard Twell, at the date of the entry of said decree of divorce and alimony, and which

was sold to said appellants, be placed in the hands of a receiver to be by him sold, and the amount of alimony due to be paid; and the balance of the money arising from such sale to be brought into court to await the further order thereof.

According to the findings and the admissions of the pleadings, this is about the situation. The respondent obtained a divorce from her husband, who is required to pay to her $50 per month as alimony during the period of her natural life, the payment of which the court required him to secure by executing a certain bond, but instead of complying with the order of the court, and in violation and contempt thereof, and for the purpose of cheating and defrauding the wife of her alimony, he secretly sells his property to Lodge & Beaumont, who knew of the decree and order of the court, and helping to defeat the same, and to aid in defrauding the respondent of her alimony, join in the conspiracy and purchase the property, and he departs the country, and his whereabouts are unknown. The question now is, whether the wife, having such a decree in her favor, and under such circumstances, may have said sale set aside and the property appropriated to the payment of her alimony?

Our statute provides that every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or in goods in action, or the rents or profits thereof, made with intent to hinder, delay or defraud creditors, or other persons, of their lawful debts or demands, shall be void. R. S. sec. 172, p. 436. It is objected to the complaint, that, as it does not show there was a judgment and execution on the award of alimony, the demurrer ought to have been sustained, and, therefore, that a creditor's bill does not lie.

"It is a general rule that a court of equity will not interfere to enforce the payment of debts until the creditor has exhausted all the remedies known to the law to obtain satisfaction of the judgment. It is usually essential, in order to

give the court jurisdiction, and to reach equitable assets, that an execution should have been issued upon the judg ment, and returned unsatisfied. The rule that the legal remedy must be exhausted by the judgment creditor before relief can be solicited to reach property, not subject to the lien of the judgment, is an old one." Wait on Fraudulent Conveyances, 115, sec. 75; Bump on Fraudulent Conveyances, 537; *Jones* v. *Green,* 1 Wall. 330; *Smith* v. *Railroad Co,* 99 U. S. 398; *Miller* v. *Davidson,* 3 Gilm. 518, 44 Am. Dec. 715; *Clarkson* v. *Peyster,* 3 Paige, 320; *Brown* v. *Long,* 36 Am. Dec. 43; *Crompton* v. *Anthony,* 13 Allen, 36; *Halbert* v. *Grant,* 4 T. B. Mon. 580; *Weightman* v. *Hatch,* 17 Ill. 281; *Zell* v. *Loper,* 75 Mo. 460.

A court of equity only comes to the rescue when the remedies at law have become exhausted and have failed. The reason for this rule rests in the obvious principle of justice that a court of equity ought not to entertain a suit to set aside a conveyance until the creditor has established his claim and exhausted his remedies in that forum, for otherwise the court itself might become the instrument of fraud. "The necessity of this first obtaining judgments at law before application is made to a court of chancery does not, however, arise from the want of jurisdiction in the court of chancery to investigate fraud; but it results from the circumstance of the demand, which constitutes the creditor cognizable at law, and the necessity of that demand being established by the determination of a court acting within its legitimate sphere; and whenever the demand is so established, the court of chancery, acting within the acknowledged sphere of its jurisdiction, will search out the fraud, and clear away all obstructions to the effectual execution of the judgment at law." *Scott* v. *McMillen,* 1 Litt. 302; 13 Am. Dec. 239.

There are exceptions to the general rule we have stated (*Smith* v. *Railroad Co.* 99 U. S. 401); and one of the exceptions is that a creditor's bill may be filed to enforce a decree in equity (Bump on Fraudulent Conveyances, 539; *Furns-*

*worth* v. *Straster*, 12 Ill. 482; *Clarkson* v. *De Peyster*, 3 Paige, 220; *Weightman* v. *Hatch*, 17 Ill. 281); and that is the kind of a decree the respondent is seeking to enforce. Under our statute, proceedings for divorce and alimony are of chancery jurisdiction. R. S. 513, 514, secs. 508, 514.

The claim of a married woman against her husband in proceedings instituted to obtain a divorce and alimony furnish the proper foundation for a creditor's bill. Bump on Fraudulent Conveyances, 505, and authorities cited in note as follows: *Feigley* v. *Feigley*, 7 Md. 537; *Blenkinsopp* v. *Blenkinsopp*, 1 DeG. M. & G. 495; *S. C.* 12 Beav. 568; *Taylor* v. *Wyld*, 8 id. 159; *Clagett* v. *Gibson*, 3 Cranch, C. C. 359; *Boils* v. *Boils*, 1 Coldw. 284; *Brooks* v. *Caughran*, 3 Head, 464; *Ruffing* v. *Tilton*, 12 Ind. 259; *Livermore* v. *Boutelle*, 77 Mass. 217; *Turner* v. *Turner*, 44 Ala. 437; *Morrison* v. *Morrison*, 49 N. H. 69; *Frakes* v. *Brown*, 2 Blackf. 295; *Chase* v. *Chase*, 105 Mass. 385; *Bouslaugh* v. *Bouslaugh*, 68 Pa. St. 495; *Kamp* v. *Kamp*, 46 How. Pr. 143; *Draper* v. *Draper*, 68 Ill. 17; *Bailey* v. *Bailey*, 61 Me. 361; *Nix* v. *Nix*, 10 Heisk. 546; *Dugan* v. *Trisler*, 69 Ind. 553.

In *Bouslaugh* v. *Bouslaugh*, 68 Pa. St. 449, the supreme court of Pennsylvania, by Agnew, J., says: "There is no reason why a wife, whose husband has deserted her, and refused to perform the duty of maintenance, or who by cruel treatment has compelled her to leave his house, and commence proceedings for divorce and maintenance, should not be viewed as a *quasi* creditor in relation to the alimony which the law awards her. So long as she is receiving maintenance, and is under the wing of her husband, as it were, she is bound by his acts as to his personal estate; but when she is compelled to become a suitor for her rights, her relation becomes adverse, and that of a creditor, in fact, and she is not to be balked of her dues by his fraud."

In *Bailey* v. *Bailey*, 61 Me. 363, the supreme court of Maine, by Peters, J., says: "The judge at *nisi prius* ruled that if the estate was conveyed to James Bailey, the father,

to prevent the plaintiff, the wife, from enforcing such decree of alimony, or other aid as might be awarded her in case she should prefer a libel against him, such conveyance was fraudulent and void as between the plaintiff and defendant. The defendant contends that a person in the situation of the plaintiff could not be regarded as a creditor, so as to come within the statutes of Elizabeth relating to fraudulent conveyances. But the statute of 13 Elizabeth, chapter 5, was passed 'for the avoiding and abolishing of feigned *covinores*, and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments, and executions, devised and contrived of malice, fraud, covin, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, damages, penalties, forfeitures, heriots, mortuaries, and reliefs.' "

In *Livermore* v. *Boutelle*, 11 Gray, 217, in a similar suit to the present, the court say: "If she was not a creditor, she was of the others, whose just and lawful actions, suits, and reliefs would be delayed, hindered or defeated by such conveyance."

In *Chase* v. *Chase*, 105 Mass. 387, the supreme court of Massachusetts, by Morton, J., said: "He contends that the demandant was not a creditor, and her husband not a debtor, within the meaning of the statutes against fraudulent conveyances. The same question was raised in *Livermore* v. *Boutelle*, 11 Gray, 217, and the court held that the wife, who, after a divorce *a vinculo*, recovered a judgment for alimony, was a creditor within the protection of the statute of 13 Elizabeth, chapter 5, and could impeach a conveyance made by her husband to delay and defraud her. The principle is the same in the case of a divorce *a mensa et thoro*. The judgment for alimony in either case creates a debt of record in favor of the wife." *Allen* v. *Allen*, 100 Mass. 373, and cases cited. In the case of *Barrett* v. *Barrett*, 5 Or. 413, the supreme court of Oregon, by Barnett, J., says: "It seems from the authorities that the right of a woman

to question a conveyance made by her husband under the circumstances mentioned can never arise until the decree of divorce, which establishes the fact that she had a cause of action against her husband, and fixes the time when the cause of suit arose, is made; and whenever that decree is made by a court of competent jurisdiction, it arms the injured wife with power to call in question the validity of any conveyance made by her husband after the cause of suit arose."

These decisions commend themselves to one's sense of natural justice, and make the statute of frauds an instrument to defeat rather than to aid in the perpetration of fraudulent practices.

It is immaterial whether the decree for alimony is called a judgment or not, or whether an execution might have issued thereon. It was a debt of record, ascertained by an adjudication in a court of competent jurisdiction, and the respondent thereby became a creditor within the meaning of our statute. Proceedings by attachment, and the recovery of a judgment for the amount of alimony due, would not have aided her in the collection of her debt, or placed her in any better or stronger position than before such proceedings had been commenced. It was not necessary to have any further proceedings or adjudication to establish the respondent's debt and claim, and a creditor's bill was her only remedy to aid her in the collection of what a competent court had declared she was justly entitled to. Our statute, by the use of the words "creditors or other persons," embraces others than those who are strictly creditors. Even the word "creditors" does not receive a strict definition, for a party who is not, strictly speaking, a creditor, may stand in the equity of a creditor, and have an interest that may be defrauded. Bump, Fraud. Con. 502. Lodge & Beaumont, the appellants, knowingly aided Twell in evading and defeating the order and judgment of the court, and thereby placed themselves in contempt of court. They knowingly and fraudulently assisted in making nugatory a

decree of the court, and compelled the respondent, in order to protect her rights and to enable her to receive what the court had decreed her, to resort to this creditor's bill to defeat their fraud. They stand in a poor plight to resist the demands of the injured wife who comes with an adjudication in her favor establishing the validity and justness of her claim.

*Judgment affirmed.*