[Sac. No. 43.　Department Two.—December 11, 1896.]

AGNES MURRAY, Respondent, *v.* OWEN MURRAY and JAMES MURRAY, Appellants.

Action by Deserted Wife for Maintenance—Fraudulent Transfers by Husband—Publication of Summons—Default—Findings—Appeal—Presumption—Support of Judgment.—In an action by a deserted wife against her husband for maintenance without divorce, and to set aside fraudulent transfers of his property, and for a receiver to take charge of the property, where the defendants are absent from the state, and service of the summons has been made upon them by publication and mailing, as prescribed by statute, and they have failed to appear in the action, there is no necessity for findings; and any findings made cannot constitute part of the judgment-roll, or be considered upon an appeal by them from the judgment; but the appellate court can only consider the complaint and judgment, and such allegations as are necessary to support the judgment are deemed to have had confirmation in the evidence.

Id.—Transfers of Husband's Separate Property—Interest of Wife —Intent to Defeat Maintenance.—Although the wife, as such, may have no such interest in the separate property of the husband as will enable her to assail voluntary transfers thereof by him, yet, when deserted by the husband, she has a right to sue him for her maintenance, and, though not in strictness a creditor of her husband, she is so far within the statute against fraudulent transfers, as respects her right to maintenance, that she may sue to avoid transfers made by her husband of his separate property, with design to defeat such right.

Id. —Transfers before Marriage — Intercourse under Promise of Marriage— Pregnancy—Subsequent Solemnization—Estoppel of Husband.—Where the parties, after agreeing to marry, assumed the relation of husband and wife, and she became pregnant before marriage, the fact that the transfer to defeat her right to support was made before the marriage was lawfully solemnized, cannot change the rule that she may, upon desertion by her husband after the marriage, assail such transfer in an action by her for the maintenance of herself and child; and the husband has no equity to say that assignments which would have been undeniably a fraud against his wife if made after marriage, should be treated as innocent when made before that event, when, by his conduct, marriage had become to her inevitable to avoid the continued stain of concubinage, and of the bastardy of her offspring.

Id.— Security for Maintenance —Appointment of Receiver — Jurisdiction of Superior Court—Usage of Equity.—The superior court has jurisdiction, under section 144 of the Civil Code, to require the husband to give reasonable security for providing maintenance, and may enforce the same by appointing a receiver; and it also has jurisdiction to appoint a receiver at the commencement of the action, under the general provisions of section 564 of the Code of Civil Procedure, for such appointment, "where receivers have been heretofore appointed by the usages of courts of equity," it being in accordance with such usage

to enforce the wife's equitable demand for maintenance, which may be charged specifically upon property described in the complaint, by appointing a receiver, where it is necessary to preserve her equitable claim thereupon from loss.

ID.—JURISDICTION IN REM—SERVICE OF SUMMONS BY PUBLICATION.—By the appointment of a receiver to take charge of property specifically described in the complaint, in connection with the service of summons by publication, the court acquires jurisdiction to render a judgment *in rem* affecting such property, notwithstanding the absence of the owner from the state, and the impropriety of rendering a personal judgment against him.

ID.—PLEADING—FRAUDULENT TRANSFERS—MISTAKEN DESIGNATION OF SECOND CAUSE OF ACTION—DISREGARD OF ERROR.—Where but one cause of action is stated, and the complaint introduces that portion of its allegation relating to the fraudulent transfers of the husband's property, by mistakenly designating it as "a separate and second cause of action," such mistaken designation should be disregarded as an error which does not affect the substantial rights of the parties.

ID.—ERRONEOUS CANCELLATION OF INSTRUMENTS—PLEADING—PARTIES.— It is error for the court to cancel a deed not mentioned in the complaint, or to cancel an instrument of lease made to one who is not a party to the action.

ID.—PERSONAL JUDGMENT NOT ALLOWABLE—EXECUTION OF BOND FOR ALIMONY—POWER OF COURT.—When summons is served by publication against nonresident defendants, the judgment cannot properly impose any personal obligation; and, in such case, the court has no power, in an action for maintenance against a husband who is out of the state, to require the absent husband to execute a bond in favor of the plaintiff, conditioned for the payment of the alimony allowed her, but the power of the court to secure the award is limited to the property within its control.

ID.—EXTENT OF DISTURBANCE OF TRANSFERS—SECURITY FOR MAINTENANCE. The fraudulent transfers made by the husband should not be set aside any further than is necessary to secure the maintenance allowed to the wife by the court; and any property not needed for such security should be restored to the person from whom the receiver took it.

ID.—PROPER FORM OF DECREE.—The decree should declare precisely what property is to continue in the hands of the receiver, or to be otherwise subjected to the satisfaction of the judgment for alimony, and the remainder, if any, should be wholly exempted from the effect of the judgment.

ID.—DIRECTION TO RECEIVER TO PAY PHYSICIAN.—The court may properly direct the receiver to pay a physician's bill incurred by the plaintiff; and it must be assumed that this was found to be a part of the necessary maintenance of the plaintiff.

APPEAL from a judgment of the Superior Court of Fresno County.   J. R. Webb, Judge.

The facts are stated in the opinion.

*J. H. Daly,* and *Sayle & Coldwell,* for Appellants.

The court could not render a personal judgment for alimony and costs against defendant, Owen Murray, as it establishes a personal demand against a nonresident only constructively served with process. (*Pennoyer* v. *Neff,* 95 U. S. 741; *Anderson* v. *Goff,* 72 Cal. 65; 1 Am. St. Rep. 34; *Blanc* v. *Paymaster Min. Co.,* 95 Cal. 524; 29 Am. St. Rep. 149; *Brown* v. *Campbell,* 100 Cal. 635; 38 Am. St. Rep. 314; *Belcher* v. *Chambers,* 53 Cal. 635; *Rigney* v. *Rigney,* 127 N. Y. 408; 24 Am. St. Rep. 462; *Beard* v. *Beard,* 21 Ind. 321; *Lytle* v. *Lytle,* 48 Ind. 200; *Prosser* v. *Warner,* 47 Vt. 667; 19 Am. Rep. 132; *Harding* v. *Alden,* 9 Me. 140; 23 Am. Dec. 549.) The second count of plaintiff's complaint states no cause of action. Each cause of action must contain in itself all the allegations of fact necessary to constitute a cause of action. (*Loup* v. *California Southern R. R. Co.,* 63 Cal. 100; *Baldwin* v. *Ellis,* 68 Cal. 495; *Collins* v. *Bartlett,* 44 Cal. 371; *Kreichbaum* v. *Melton,* 49 Cal. 55.) The wife has no legal right, under any circumstances, to interfere with the engagements of the husband affecting his separate property. (Civ. Code, secs. 157, 172; *Smith* v. *Smith,* 12 Cal. 217; 73 Am. Dec. 533; *Van Maren* v. *Johnson,* 15 Cal. 312; *Greiner* v. *Greiner,* 58 Cal. 115; *De Godey* v. *Godey,* 39 Cal. 164.) The judgment is inconsistent with the issues, as well as with the findings and conclusions of law. No equities are recited to justify the appointment of a receiver. (*Carpentier* v. *Brenham,* 50 Cal. 552.)

*J. P. Meux,* and *H. M. Johnston,* for Respondent.

The jurisdiction of a superior court of this state, obtained by publication of summons, is sufficient to settle all rights or claims to real property situated within the state. (Code Civ. Proc., secs. 412, 749; *Perkins* v. *Wakeham,* 86 Cal. 580; 21 Am. St. Rep. 67; *Pennoyer* v. *Neff,* 95 U. S. 714; *Arndt* v. *Griggs,* 134 U. S. 320.) The appointment of a receiver was the proper procedure in a case of this nature, and is the common practice. (Code

Civ. Proc., sec. 564; Civ. Code, sec. 140; *Sharon* v. *Sharon,* 67 Cal. 202; Stewart on Marriage and Divorce, sec. 377, subd. 2; *Belcher* v. *Chambers,* 53 Cal. 635; *Brown* v. *Campbell,* 100 Cal. 635; 38 Am. St. Rep. 314.) In actions to determine the *status* of parties, the summons may be served by publication. (*Estate of Newman,* 75 Cal. 213; 7 Am. St. Rep. 146; *Pennoyer* v. *Neff, supra.*) The facts stated in the complaint are sufficient to constitute a cause of action, especially against a general demurrer. (*Pfister* v. *Wade,* 69 Cal. 136; *Pooler* v. *Wilber,* 95 Cal. 339; *Hardy* v. *Hardy,* 97 Cal. 125; *Storke* v. *Storke,* 99 Cal. 621.) Neither party, after entering into a treaty of marriage or contract to marry, can voluntarily, without consideration or knowledge of the other, convey away property so as to bar the other's marriage rights. (Stewart on Marriage and Divorce, sec. 44; Bigelow on Fraud, 149, 150; *Strathmore* v. *Bowes,* 1 Ves. Jr. 22; *Taylor* v. *Pugh,* 1 Hare, 608; Bispham's Equity, 253; *Tisdale* v. *Bailey,* 6 Ired. Eq. 358; *Goodson* v. *Whitfield,* 5 Ired. Eq. 163; *Logan* v. *Simmons,* 3 Ired. Eq. 487; *Leach* v. *Duvall,* 8 Bush, 201; *McAfee* v. *Ferguson,* 9 B. Mon. 475; *Petty* v. *Petty,* 4 B. Mon. 216; 39 Am. Dec. 501; *Smith* v. *Smith,* 6 N. J. Eq. 515; *Taylor* v. *Pugh, supra; Peek* v. *Peek,* 77 Cal. 106; 11 Am. St. Rep. 244; *Green* v. *Green,* 34 Kan. 740; 55 Am. Rep. 256.) Alimony is not dependent upon the question of community property, and may be awarded out of, and the payment made a lien upon, the separate property of the husband. (*Robinson* v. *Robinson,* 79 Cal. 511.)

BRITT, C.—Plaintiff having been deserted by her husband, the defendant Owen Murray, she instituted this action against him for maintenance, without divorce, and to set aside certain transfers of property made by him to his brother, the defendant James Murray, which obstruct the enforcement of her right. Both defendants being absent from the state— said James residing in Canada—summons was served on them by publication and mailing as prescribed by statute. They failed

to appear, and plaintiff obtained judgment, from which defendants appeal. In the printed transcript appears a paper entitled "Findings," and it is recited in the judgment that the court, after hearing the evidence, "made and filed its findings of fact and conclusions of law herein"; but as there was no necessity for findings, and as in such a case findings, if made, do not constitute part of the judgment-roll (Code Civ. Proc., sec. 670), we can look for the facts of the controversy only to the complaint and judgment; such allegations of the complaint, however, as are necessary to support the judgment are deemed to have had confirmation in the evidence.

It appears from the complaint that plaintiff and defendant Owen, residents of Fresno county, in this state, about August 1, 1893, agreed to intermarry, and at once assumed the relations of husband and wife, and she was got with child by him; on November 7th following they were lawfully married, and in March, 1894, he brought her to the city of San Francisco, where he abandoned her among strangers, and himself departed the state, leaving her in circumstances of miserable destitution. In October, 1893, after the said meretricious cohabitation had begun, said Owen was the owner of divers promissory notes secured by mortgages of real estate amounting in face value to near six thousand dollars, among which was a note and mortgage executed in his favor by one Briscoe for the sum of two thousand dollars, and another executed by one Crow for the sum of fifteen hundred dollars; he also owned a sheriff's certificate of sale of certain land in the town of Fresno, and then had possession of such land. Without the knowledge of plaintiff, and with intent to defraud her of the right to subject said property to her claims for maintenance and support, about October 4, 1893, he assigned and transferred said notes and mortgages and said certificate of sale to his brother, said James Murray, who rendered no consideration for such assignment, but was "cognizant of said intent and purpose, and conspired with de-

fendant Owen to get rid of his property in the manner aforesaid, in order to defraud the plaintiff out of the enjoyment and benefit of any portion thereof." At the same time said Owen received back from his brother a power of attorney authorizing him to manage said property for the latter; acting thereunder, on February 7, 1894, he collected the money due on the note and mortgage of Crow, and released the mortgage, but kept the money for himself. A deed was made subsequently to said assignments, conveying the land described in said certificate of sale to said James Murray, and about March, 1894, said Owen leased such land, which had been occupied as the home of himself and plaintiff, to one Smith, who went into possession of the same; the said notes and mortgages, other than that released on February 7, 1894, are within the jurisdiction of the court, and said Owen has no other property within the state to the knowledge of plaintiff. It was averred in the complaint that, unless a receiver be appointed to take charge of said securities and said land, the defendants would convey the land and remove the securities beyond the control of the court. The prayer was for maintenance and alimony, *pendente lite* and permanent; that the said transfers and conveyance be canceled and the said property adjudged to belong to defendant Owen; that a receiver be appointed to take charge of the same, etc.

By its judgment rendered November 22, 1894, the court in terms set aside the transfers and assignments described in the complaint (except that of the Crow mortgage), and declared the property which was the subject thereof to be the property of said Owen, and chargeable with the maintenance of plaintiff and their infant child; in like manner it declared to be fraudulent and void the said lease to Smith, and also a certain deed of real estate made by one Evans and one Mancourt to James Murray, on February 14, 1894, and declared the land described therein to be the property of said Owen; it was further adjudged that plaintiff be

permitted to occupy and use the premises in the town of Fresno formerly occupied by herself and her said husband, and that she by allowed, in addition, the sum of twenty-five dollars per month, from December 1, 1894, the payment of the same to be a charge upon said premises, and also secured by a bond in the sum of fifteen hundred dollars, which said Owen was required to execute with sureties; that in default of such bond the receiver previously appointed by the court (who by the admission of counsel and the recitals in the judgment appears, on the commencement of the action, to have taken possession of all the property involved) deposit the note and mortgage of said Briscoe in the hands of a person designated to receive the same "as security for the payment to plaintiff of said alimony"; that the receiver pay the sum of twenty-five dollars to certain physicians named for professional services rendered to plaintiff during illness; "that when said several sums of money have been paid, and the further payment of alimony . . . . properly secured as provided herein, the receiver is directed to deliver all of said property and effects remaining after said payment into the custody" whence he had taken it; which being done, the receiver shall be finally discharged.

1. It may be, as contended by appellants, that in virtue of our statute (Civ. Code, sec. 157), declaring that neither husband nor wife has any interest in the property of the other, the wife, in this state, merely because of her conjugal relation, has no standing to attack a voluntary disposition of her husband's separate property, made either before or after marriage, and this for the apparently simple reason that the fact of marriage gives her no interest (<i>Smith</i> v. <i>Smith</i>, 12 Cal. 216; 73 Am. Dec. 533; <i>Chandler</i> v. <i>Hollingsworth</i>, 3 Del. Ch. 99; <i>Dudley</i> v. <i>Dudley</i>, 76 Wis. 567; <i>Butler</i> v. <i>Butler</i>, 21 Kan. 525' et seq; 30 Am. Rep. 441); but that is not the question here; admitting such to be the rule, the plaintiff is not affected by it; she is the deserted wife of defendant Owen, and by reason of his act of desertion is author-

ized to maintain the action (Civ. Code, sec. 137); to defeat its purpose he made the transfers of property to his brother; every transfer of property made with intent to delay or defraud any creditor or other person of his demands, is by the statute of Elizabeth, re-enacted in the Civil Code, section 3439, declared void as against all creditors of the debtor, etc.; the wife, though not in strictness a creditor of the husband, is yet, as concerns her right to maintenance, so far within the protection of this statute that it avoids his transfers made with the design to defeat such right. (*Green* v. *Adams*, 59 Vt. 609; 59 Am. Rep. 761; *Tyler* v. *Tyler*, 126 Ill. 525, 537; 9 Am. St. Rep. 642, and cases cited; *Stuart* v. *Stuart*, 123 Mass. 370; Stewart on Marriage and Divorce, sec. 381; see *Lord* v. *Hough*, 43 Cal. 581.) And, the circumstances of this case considered, in our judgment the fact that the marriage had not been solemnized at the time of the transfers to James Murray cannot prevent the application of the rule here; the plaintiff was in that condition that even knowledge of the fraudulent assignments would not have enabled her to exercise a fair option whether she would fulfill her engagement with Owen Murray; to her the alternative was marriage, or the continued state of concubinage, and the bastardy of her offspring. In *Taylor* v. *Pugh*, 1 Hare, 608, the woman, before marriage, and without the knowledge of her intended husband, who had seduced her, executed a settlement of her property for her own benefit; after the marriage the husband filed a bill to set aside the settlement as in fraud of his marital rights; the court denied the relief, the vice-chancellor—Sir James Wigram—saying: "The husband, by bringing the intended wife to his house and inducing her to cohabit with him before the marriage, deprived her of the power to protect herself, and thereby precluded himself from telling this court with any effect that his wife has committed a fraud upon him because she has taken the precaution to have her property secured for herself and her children." Conversely, in this instance, the husband has

no equity to say that the assignments which would have been undeniably a fraud against the plaintiff if made after marriage, shall be treated as innocent because made before that event, when, by his conduct, marriage had become to her inevitable.

2. By section 140 of the Civil Code, the court in an action such as this, or for divorce, may require the husband to give reasonable security for providing maintenance, and may enforce the same by appointing a receiver. This court has said recently that the only authority for the appointment of a receiver in a divorce suit is to be found in that section (*Petaluma etc. Bank* v. *Superior Court*, 111 Cal. 488); if this be true also of an action for maintenance without divorce, it would seem that the language of the section is yet sufficient to justify the appointment of the receiver made in this case at the commencement of the suit. (*Carey* v. *Carey*, 2 Daly, 424.) But assuming that the statute does not reach so far, still, in our opinion, the action is by reason of the inadequacy of purely legal remedies so much a subject of equitable cognizance that it carries with it the right to have a receiver appointed under the general provision for such an officer in all cases "where receivers have been heretofore appointed by the usages of courts of equity." (Code Civ. Proc., sec. 564.) That the relief sought is within the general powers of a court of equity to grant, and is not dependent upon statute, has been decided by this court, and the principle has found quite general acceptance. (*Galland* v. *Galland*, 38 Cal. 265; Story's Equity Jurisprudence, 1423 a; *Hanscom* v. *Hanscom* (Colo. App.), 39 Pac. Rep. 885, and cases cited; *Tolman* v. *Tolman*, 1 Dist. Col. App. Cas. 299.) "The wife's claim to alimony is an *equitable demand* against the husband, and there can be no doubt of her right to attack, for fraud, any transfers of property made by him with intent to defeat her claim, and that such fraudulent grantees may properly be made defendants to the suit for alimony." (*Hinds* v. *Hinds*, 80 Ala. 225.) The wife having such a demand, and her position

being assimilated to that of a creditor of her husband (*Feigley* v. *Feigley*, 7 Md. 537; 61 Am. Dec. 375; *Tyler* v. *Tyler, supra; Livermore* v. *Boutelle*, 11 Gray, 217; 71 Am. Dec. 708; *Green* v. *Adams, supra*), it would appear that a receiver in aid of the enforcement of the demand should be appointed, when the occasion arises, for reasons like those on which a creditor, seeking to avoid fraudulent conveyances of a debtor, is permitted to employ the same instrumentality.   The rule in equity is that a receiver may be appointed before answer, provided the plaintiff can satisfy the court that he has an equitable claim to the property in controversy, and that a receiver is necessary to preserve the same from loss. (*Bloodgood* v. *Clark*, 4 Paige, 574; High on Receivers, sec. 105, and cases cited.)   As shown, the plaintiff here has a demand enforceable in equity, and it may be charged specifically upon the property described in the complaint.   (*Robinson* v. *Robinson*, 79 Cal. 511; Civ. Code, secs. 137, 140, 141;  *Plumb* v. *Bateman*, 2 Dist. Col. App. Cas. 170, 171; *Hanscom* v. *Hanscom, supra*.)   It seems necessarily to follow that the court had power to appoint the receiver at the beginning of the action.   Of course, such a power should be very cautiously exercised, but there is nothing in the present record to show that the court was indiscreet in that behalf.

3. We have dwelt somewhat upon the matter of the receivership because of the influence of that proceeding on the question of the jurisdiction of the court to render any judgment at all.   Service of summons by publication, or other form of substituted service of process for notifying an absentee or nonresident defendant of an action against him, is allowed to be effectual " where, in connection with process against the person for commencing the action, property within the state is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein." (*Pennoyer* v. *Neff*, 95 U. S. 733; *Brown* v. *Campbell*, 100 Cal.

641; 38 Am. St. Rep. 314.) Perhaps the jurisdiction in this case is maintainable on the ground that the judgment is sought as a means of affecting an interest in the property described in the complaint; however that may be, we have no doubt that by means of the receiver's possession of the property, and the due publication, etc., of the summons, the court acquired jurisdiction to subject the property seized to the satisfaction of its lawful judgment. According to the common experience of mankind, the owner of property keeps some oversight of it, wherever situated, and will probably be apprised of the seizure thereof and so warned of the purpose of the seizure; to accomplish this object the taking of property into the possession of a receiver is at least as well adapted as the similar taking by process of attachment, and it is common practice to apply property which has been attached in the course of an action *in personam* against a nonresident to the satisfaction of the judgment obtained, although no personal service of summons has been effected. Attachment is not the only means by which the court may acquire control of the property of the absentee defendant, so as to impress the action, as to such property, with the jurisdictional characteristics of a proceeding *in rem*. Several recent cases illustrate this conclusion; most of them relate to the effect of legislation such as sections 412 and 749 of the Code of Civil Procedure. (*Hanscom* v. *Hanscom, supra; Thurston* v. *Thurston*, 58 Minn. 279, 287; *Carson* v. *Shoemaker*, 55 Minn. 396; *Bennett* v. *Fenton*, 41 Fed. Rep. 283; *Single* v. *Scott etc. Co.*, 55 Fed. Rep. 553; *Miller* v. *Jones*, 67 Hun, 281; *Arndt* v. *Griggs*, 134 U. S. 316; *Plumb* v. *Bateman, supra; Bragg* v. *Gaynor*, 85 Wis. 470.) The case last cited was a creditor's bill to reach certain debts evidenced by notes and mortgages executed by residents of the state to Gaynor, and by him assigned in fraud of Bragg, a judgment creditor; both Gaynor and the fraudulent assignee were nonresidents, were served with process out of the state, and failed to appear; the court held that such debts were "property

within the state " within the meaning of a statute like
in this particular to section 412 of our Code of Civil
Procedure, as amended in 1893, and that the service of
an injunction on the mortgagors, who were made de-
fendants, restraining them from paying to the nonresi-
dent creditor, brought the debts under the control of
the court, so that its judgment avoiding the assignment
and appointing a receiver to collect the debts and apply
the proceeds to the payment of Bragg's demand against
Gaynor was valid. We see no essential difference as
concerns the question of jurisdiction between that case
and the present.

4. It is contended that a portion of the complaint in-
troduced with the words "for a separate and second
cause of action, plaintiff avers," etc., and which contains
virtually all the allegations of the pleading relating to
the fraudulent transfers from Owen to James Murray, is
insufficient as a statement of a cause of action in that it
fails to allege the husband's failure to provide for the
wife's support. The complaint is loosely drawn; but
we think it apparent that it contains but one cause of
action, and that the portion thereof to which appellants
point this objection is not a real attempt to state a sec-
ond transaction intended as an independent ground for
plaintiff's suit, but is only a detail of matters tending to
show the extent, form, and nature of the relief to which
she is entitled upon her single cause of action, viz., her
husband's desertion and his failure to maintain her;
and that the words designating it "a separate cause of
action" should be disregarded as an error which does
not affect the substantial rights of the parties. (Code
Civ. Proc., sec. 475.)

5. It was error to cancel the deed made by Evans and
Mancourt to James Murray; it is not mentioned in the
complaint, and for anything appearing Owen Murray
had no interest in it. So the lease ᵗ ˑ Smith should not
have been canceled; Smith was not made a party to the
action; he had a right to an opportunity for a hearing,
however fraudulent may have been the contract of lease.

We think, also, that the court had no power to require said Owen to execute a bond in favor of plaintiff conditioned for the payment of the alimony allowed to her; no obligation upon him personally can be imposed by the judgment (*De La Montanya* v. *De La Montanya*, 112 Cal. 101; 53 Am. St. Rep. 165,) and the power of the court to secure the award to plaintiff is limited to the property within its control. The court should not have disturbed the transfers to James Murray any farther than the exigencies of the decree in favor of plaintiff required; any property not needed for securing the maintenance allowed to her, and which can be restored to the person from whom the receiver took it, as provided in the judgment, is that much which, as between defendants, belongs to James Murray. The court should have declared precisely what part of the property was to continue in the hands of a receiver, or otherwise subjected to the satisfaction of the judgment, and the remainder, if any, should have been wholly exempted from the effect of the judgment.

So far as the facts are disclosed by the record, we see no error in the direction that the receiver pay a physician's bill incurred by plaintiff; it must be assumed that this was found to be part of the necessary maintenance of plaintiff, which was the very purpose for which the funds were in the hands of the receiver. (See *Fox* v. *Hale etc. Co.*, 108 Cal. 475; *Robinson* v. *Robinson*, *supra*.)

If this were an action for divorce as well as maintenance we should say that the difficulties attending a continuing allowance under the circumstances are such that it would be better to award the plaintiff absolutely a gross sum, or part of the property in question, as in *Robinson* v. *Robinson*, *supra;* but as possibly the cohabitation of the parties may be resumed, we think the cause should be remanded, with instructions to the court below to modify and amend the judgment in the particulars wherein we have shown it to be erroneous,

and as so modified and amended it should stand affirmed.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the cause is remanded, and the court below is instructed to modify and amend its judgment in the particulars wherein it is shown by said opinion to be erroneous, and as so modified and amended it will stand affirmed.

Garoutte, J.,    Van Fleet, J.,
McFarland, J.,    Beatty, C. J.

Harrison, J., and Temple, J., dissented.