WALLACE, APPELLANT, *v.* WALLACE, RESPONDENT.

(No. 6,943.)

(Submitted September 22, 1932. Decided November 4, 1932.)

[15 Pac. (2d) 915.]

*Mr. E. C. Mulroney,* for Appellant, submitted a brief and argued the cause orally.

492

*Mr. S. P. Wilson* and *Mr. Harry H. Parsons* (the latter now of the Bar of San Bernardino, California), for Respondent, submitted a brief; *Mr. Wilson* argued the cause orally.

HONORABLE JOHN HURLY, District Judge, sitting in place of MR. JUSTICE FORD, disqualified, delivered the opinion of the court.

Appellant herein (the husband) married respondent on August 5, 1925. The issue of the marriage is Mary Lou Wallace, a daughter, born on July 18, 1926. On May 28, 1928, in an action brought by the husband, on the wife's cross-complaint, a decree of divorce was entered in favor of the wife, by the terms of which she was given the custody of the child, certain money for expense of an operation on the child, besides costs, suit money, and attorney's fees, and allowance for the support of herself and child, in the sum of $150 per month.

The decree, among other things, referred to the fact that appellant's mother held in trust for appellant $40,000 in government bonds, and restrained him from in any manner disposing of such bonds until the provisions of the decree relative to attorney's fees and suit money had been complied with. These items have been paid by appellant and do not enter into a consideration of the present appeal.

On July 9, 1931, appellant moved the court for an order modifying the decree by reducing the monthly allowance from $150 to $100 per month. At about the same time respondent moved the court for an order requiring appellant to give security for the payment of alimony, and to that end asked the court to sequester and hold the $40,000 in bonds as security for the payment of the alimony to accrue in the future.

The motions were heard at the same time, and the testimony in each was considered as a part of the record in the other. The court by two separate orders denied the request for reduction of alimony and, upon the application for security to insure the payment of alimony and maintenance, "after consideration," etc., "finds generally in favor of defendant and against plaintiff. * * * That plaintiff give security, to be in force and effect until the further order of the Court, for the continued payment by him of 'The sum of $150.00 on the first day of each and every calendar month from and after the date of these Findings and for the support and mainte-

nance of the defendant and the minor child, Mary Louise Wallace,' as provided in and by the decree and judgment duly given and made and filed herein on the 24th day of May, 1928, by surrendering up, delivering to, and depositing with (or causing to be surrendered up, delivered to and deposited with) the clerk of this Court, on or before the 29th day of September, 1931, ten (10) of the '40 U. S. Bonds, registered, of $1,000 each,' mentioned and set forth in the Inventory and Appraisement in the Matter of the Estate of William Wallace, Deceased, in the records and files of this Court, which, or the proceeds of which, under the terms of the will of said deceased, plaintiff is to receive on September 29th, 1931, upon his arrival at the age of thirty years, or the proceeds of said ten bonds, to-wit, the sum of $10,000 (the income of said bonds or any income of the proceeds thereof to remain the property of and be received by the plaintiff); and that plaintiff and said Martha J. Wallace refrain, until the further order of the Court, from disposing of, selling, removing out of the State, or incumbering, all [or?] in any manner contrary to this order, said ten bonds or the proceeds thereof. Plaintiff (if he so elects, and without waiver of any of his rights in connection with this order) may apply to the court, upon notice, on or before September 1, 1931, for leave to furnish, in lieu of the above security, a bond, in like amount and for like purpose, with good and sufficient surety, to be approved by the Court.''

From each of these orders the husband appeals. By stipulation the appeals were heard together and this opinion covers both appeals.

We have carefully considered the evidence upon the application to reduce the monthly allowance now being paid by appellant. While we think the lower court might well have reduced the allowance, we cannot say, as a matter of law, that it abused its discretion in refusing to do so. We do not occupy the position of triers of facts, and cannot disturb its findings of fact. The evidence, therefore, will be considered further only in so far as it applies to the application for secu-

rity to insure the payment of the monthly maintenance, and alimony.

The application to require security for payment of alimony was based upon affidavit of the respondent that the appellant's estate was being dissipated, and that he was about to remove from the state of Montana to California; that practically his only visible estate consisted of the government bonds, and an inchoate interest, in the nature of a remainder or reversion as to the lands bequeathed in his father's will, and that unless security should be given he would remove his personal property from the jurisdiction of the courts of Montana, and thereby deprive respondent and her child of their support, commanded by the original decree of divorce; that appellant was frequently in default in making his payments, once at least as much as three months in succession, etc.

The testimony discloses that the father of appellant died in 1914, leaving a widow and one son, this appellant, then about thirteen years of age. The father was a man of large means, owning real estate worth over $100,000, much personal property aside from the bonds in question, and also over $22,000 in cash. The will gave the widow the control of and the income from the entire estate until the son should arrive at the age of twenty-one years; and that when he should so attain his majority the estate should be so divided that the $40,000 in government bonds should be held in trust by the widow until the son should arrive at the age of thirty years, when the sum so invested should be delivered to him, and that in the meantime the income derived therefrom should be paid to the son. The will further provided that when the son should reach the age of twenty-one all the personal property, with the exception of furniture, household goods and farm equipment, should be delivered to him, and that all real estate, the personal property, and the income therefrom last mentioned were granted to the widow for life, and that upon her death all the estate should become the property of the heirs of the son, and if the son has no *heirs* then living, the estate is to be

divided among brothers of the testator, or their sons if the brothers should be then deceased.

The testimony showed that appellant would reach the age of thirty on the twenty-ninth day of September, 1931, shortly following the hearing upon the two applications appealed from. The testimony further showed that appellant had, at the time of the hearing, no other income except that derived from the bonds, which bore interest at three per cent. per annum, netting him $1,200 annually; that he had engaged in various ventures, and had spent over $12,000 upon his wedding trip, and that practically all of the estate received by him, with the exception of the bonds held in trust, had been transferred to his mother; that he had worked for his mother at a salary of $100 per month, plus living expenses, but had never earned other money for himself; that the bonds, at the time of the hearing, had been pledged by the mother, with his consent, to a bank to secure an indebtedness of $25,000 owing by her, and $15,000 owing by him. The debt of the mother so secured had been reduced to approximately $4,000 at the time of the hearing.

For some time prior to the date of the application, appellant was a student in the law department of one of the universities in California, and previously had graduated from the State University of Montana. He testified he had no money with which to pay his expenses in California, or upon which to live, except that his mother furnished him with the means to attend school, for his support, etc. The testimony also showed that a policy of insurance upon his life, originally payable to his daughter, on which the annual premiums were about $520, had been made payable to an aunt, with a clause in some way benefiting his mother; that he had expended over $1,500 in attempting to learn flying; that he had only $50 in cash, was about to remarry; and that he had no means of supporting the wife he was about to marry except as he should be aided by his new wife's father and his own mother. The testimony further showed that a judgment against him in a sum of about $300 (*Thornton* v. *Wallace*, 85 Mont. 27, 277

Pac. 417) had not yet been paid; that his mother had a power of attorney from him authorizing her to do anything she might desire as to his property.

The testimony also showed the ill health of the child of appellant and respondent, expense of medical and personal attention, etc. There was also testimony of experienced men of affairs, corroborated by the mother, as to appellant's business ability, showing that in managing affairs for his mother on the ranch he had used good judgment and made many profitable deals for her, acting on his own initiative.

It was also shown that the respondent had recovered and collected in the damage action against appellant's mother, (*Wallace* v. *Wallace*, 85 Mont. 492, 66 A. L. R. 587, 279 Pac. 374), $22,000, the net proceeds of which, after deducting costs and attorney's fees, amounted to about $12,000; that the respondent had invested at the time of the hearings a balance remaining in her hands of about $8,000; and that she had an income, independent of the sums paid her by her former husband, of between $35 and $50 a month. It also appeared that the respondent's expenditures for herself and child in the year preceding the hearing had been in excess of $3,000. The respondent also was attending a university in California.

Much of the testimony as to extravagances of the appellant had to do with expenditures made by him long prior to the divorce. For instance, it appeared that certain property which had been bequeathed to him by his father was transferred to his mother when he arrived at twenty-one years of age, and prior to his marriage to the respondent. Presumably the financial situation of the parties was fully considered by the court in the trial of the original action.

The conditions prior to the decree of divorce have no bearing on the appeal, except to show the general situation of appellant, his finances and the causes therefor, as well as probabilities in the future.

Our statutes, Revised Codes of Montana 1921, contain the following provisions relative to alimony, maintenance and support, and costs, in actions for separate maintenance and sup-

port, as well as for divorce. Section 5769: "While an action for divorce is pending the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action. When the husband wilfully deserts the wife, she may, without applying for a divorce, maintain in the district court an action against him for permanent support and maintenance of herself or of herself and children. During the pendency of such action, the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance, and executions may issue therefor in the discretion of the court or judge. The final judgment in such action may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court." Section 5770: "In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." Section 5771: "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects." Section 5772: "The court or judge may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case."

It is the contention of appellant that while section 5769, supra, contains definite provisions for altering, varying, or revoking a decree for separate maintenance of a wife and chil-

dren, no such liberality should be permitted a court in the case of an allowance for herself and maintenance of the children of the marriage in the case of an absolute divorce. It is argued, with much cogency, that under section 5771 the decree is absolute and final in all respects, except that the court may increase or decrease the allowance or provision for maintenance from time to time and that only "in those respects" may the decree be modified. Considering the sections as a whole, however, we do not believe such narrow construction should be placed upon the statutes.

In a proceeding where separate maintenance is awarded without divorce, the expressed liberality of the statute as to change in the terms of the decree is no doubt by reason of the fact that, in such instances, the marriage tie is not severed, and the marital status is preserved, and amendments of the decree should and may be necessary from time to time, and the husband in most instances bears the burden of supporting the wife, she retaining her dower interest in realty, etc. (*Decker* v. *Decker*, 56 Mont. 338, 185 Pac. 168.) However, in divorce, there is an absolute severance of the marital tie so far as the legal status of the parties is concerned, and the only legal obligation of the husband to his former wife is that, if he is at fault, the court may impose upon him the necessity of supporting his divorced wife.

While both sections, 5769 and 5771, contain provisions relating to the support of the children and of the wife, the two sections should be considered together, and both included as within the provisions of section 5772.

In *Lisenbee* v. *Lisenbee*, 42 Cal. App. 567, 183 Pac. 862, a section corresponding to our 5772 was held applicable to a section similar to our 5769; and in *Huellmantel* v. *Huellmantel*, 124 Cal. 583, 57 Pac. 582, a receivership was allowed upon a failure to pay alimony awarded, under provisions similar to our 5771, in a divorce action.

It is further contended that a wife divorced from her husband, to whom allowance for support has been awarded, bears only the relation to him of a creditor as to the collection of

such allowance, and that she may enforce the collection of arrearages as any other creditor would be permitted to do. Conceding that she does occupy the position of a creditor in that respect (*Murray* v. *Murray*, 115 Cal. 266, 56 Am. St. Rep. 97, 37 L. R. A. 626, 47 Pac. 37; *Lisenbee* v. *Lisenbee*, supra; *Twell* v. *Twell*, 6 Mont. 19, 9 Pac. 537), it does not necessarily follow that she is a creditor only.

Conceding the finality of a divorce decree, except the power to modify the same as to the alimony or allowance made to the wife, as provided by section 5771, no difficulty is encountered in saying that section 5772 applies also. For the sake of example, in the original decree, allowance for support may be awarded, and due to circumstances then existing, the court may require security from the husband for providing maintenance or making any payments required, and may enforce the same by appointment of a receiver, etc. If appellant's theory is correct that the judgment is final in every respect, except that the court may increase or decrease the amount awarded to the wife, then the terms of the decree as to requirement of security, appointment of a receiver, are so rigid that in no circumstances may the husband be released from such shackles.

The power to modify "in these respects" carries with it the corresponding power to enforce the terms of the decree, "having regard to the circumstances of the parties," by requiring the husband to give security or otherwise coercing him as provided by section 5772. (*Huellmantel* v. *Huellmantel*, supra.)

Had the court seen fit in the original decree to have included therein a provision that it was necessary that a receiver be appointed, or had it made the sums to be paid the wife for support and maintenance of herself and child a lien upon particular property, or even decreed a lump sum to the wife, or have required security for the enforcement of the payments, upon proper and sufficient evidence, there can be no doubt the same would have been in accordance with the statute. (*Bast* v. *Bast*, 68 Mont. 69, 217 Pac. 345; *Thrift* v. *Thrift*, 54 Mont. 463, 171 Pac. 272; *Decker* v. *Decker*, supra; *Gaston* v. *Gaston*, 114 Cal. 452, 55 Am. St. Rep. 86, 46 Pac. 609.)

In our view, it follows that upon a sufficient showing of change in conditions, due to the wilful fault of the husband, since the original decree, the court may enforce what might otherwise be unenforceable, by requiring security of the husband in aid of its decree.

In *Huellmantel* v. *Huellmantel,* supra, a receiver was appointed of a husband's property, after final decree, upon proof of his failure to meet payments allowed in the decree, and that he was fraudulently disposing of his realty to defeat the payments. The appointment of the receiver, and, incidentally, a portion of the order making the decree a specific lien on described real estate, were held proper under the section of the California statutes similar to our section 5772.

It is not in all cases that a wife is entitled to a modification as to the award or allowance. When a decree makes no provision at all for allowance to a wife, it seems to be quite generally the rule that the court may not later add a provision awarding her an allowance. (*Howell* v. *Howell,* 104 Cal. 45, 43 Am. St. Rep. 70, 37 Pac. 770; *Mathers* v. *Mathers,* 42 Idaho, 821, 248 Pac. 468.) In such case the decree is final. The case presented here differs from the rule last stated, and from that in the *Huellmantel Case,* though the latter is analogous.

There was sufficient testimony to support the order impounding the bonds. The pledge of the bonds by the mother and son, contrary to the intentions expressed in the will, during the continuance of the trust, was in itself of sufficient importance to cause a trial court to believe that there would soon be no estate in the name of the plaintiff. The evidence certainly does not preponderate against the finding of the lower court.

The orders appealed from are affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS, and HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, concur.