No. 79-8

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN RE THE MARRIAGE OF

CAMDEN ELAINE WINN,

Petitioner and Respondent,

-vs-

LESLIE RAND WINN,

Respondent and Appellant.

---

Appeal from: The District Court of the Nineteenth Judicial
District, In and for the County of Lincoln,
The Honorable Robert C. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips,
Kalispell, Montana

For Respondent:

Fennessy, Crocker, Harmon and Bostock, Libby,
Montana

---

Submitted on Briefs: June 5, 1980

Decided: OCT 22 1980

Filed: JUL 22 1980

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The father, Leslie Rand Winn, appeals from a judgment of the Lincoln County District Court denying his petition to modify a custody decree. We affirm the District Court, but also deny the request of the wife that she be awarded attorney fees for expenses incurred in defending this appeal.

Camden Elaine Winn and Leslie Rand Winn were married on July 27, 1973 in Troy, Montana, and divorced on May 26, 1976. A daughter was born during the marriage and the Lincoln County District Court decree gave custody to the mother. The father received reasonable visitation rights.

On January 19, 1979, the father filed a petition for modification of the custody decree, and asked that he be given custody of the minor daughter. Shortly before, the mother had moved to North Carolina with the daughter to be with a man whom she was to marry in May of that year. The original decree provided that the mother first obtain permission from the District Court if she intended to establish residence in another state. The mother failed to do this.

The essential contention of the father in support of his request for custody, was that the mother had changed her residence many times while living in the Lincoln County area, thus adversely affecting the child, and that the mother had lived with other men or had other men living with her before her remarriage. The trial court accepted neither of these arguments; nor do we.

Although the mother had moved many times in the general vicinity of Libby and Kalispell after the divorce and before her move to North Carolina, it was not established that these moves adversely affected the physical, mental, moral or emotional health of the child as required by section 40-4-219(1), MCA. The father was not prevented from visiting his child because of these

-2-

many moves.

The father did not prove that the mother's living with other men before her remarriage adversely affected the health of the child so as to require a change in custody under section 40-4-219. See Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309, 1312. The evidence, at best, shows that the mother may have temporarily lived with one man other than the man she is now married to. The evidence establishes that the mother's present husband interacts well with the child and that he is neat and clean. It appears that he is employed. We cannot say that the trial court abused its discretion in finding that the child's welfare was not adversely affected within the meaning of section 40-4-219.

Nonetheless, this case illustrates a problem which may very well get worse. By not seeking the court's permission before removing the child from the state, the mother forced her ex-husband to take some action in court to reestablish his relationship with his daughter.

The original decree allowed the father to visit his daughter upon reasonable notice as often as he wished as long as the visits did not unreasonably interfere with the wife. That portion of the decree was effectively nullified when the mother moved to North Carolina with her child. The father was left with a visitation decree which was virtually meaningless. Undoubtedly it was to prevent this kind of situation which caused the trial court in the original order to require the mother to get permission from the court before moving with the child to another state. Although we do not suggest that the trial court could, absent some persuasive evidence, prevent the mother from moving to another state with her child, it goes without saying that had the mother given advance notice, the father's visitation privileges could have been accordingly modified. But when the

mother left without first getting the decree modified as to visitation, she forced the father's hand. The only meaningful option he had was to force the issue by seeking a change in custody. Although he was not successful, he at least obtained a change in visitation to reflect the changed geographical distance between himself and his daughter. The trial court ordered that the father have custody for six weeks every summer, during alternate Christmas and Easter holidays and at other times convenient to the father and which would not interfere with the schooling or other activities of the child.

District courts have the means to compel compliance with their orders concerning removal of children from the state. A trial court may assert continued power over domestic matters by requiring a bond conditioned upon a party's compliance with the court order. See Grimditch v. Grimditch (1951), 71 Ariz. 237, 226 P.2d 142 (permitting, under the facts, removal without bond); Wallace v. Wallace (1932), 92 Mont. 489, 15 P.2d 915, 918 (security can be required to enforce an alimony decree). The trial court may also hold in contempt a parent who violates an order to secure court approval before removing a child from the state. Ex Parte Sellers (1948), 250 Ala. 87, 33 So.2d 349; Benson v. Benson (1948), 121 Mont. 439, 193 P.2d 827, 829 (dictum); see also Kramer v. Kramer (1978), 176 Mont. 362, 578 P.2d 317, 318. We suggest that the trial court, in appropriate cases, employ these alternatives.

The mother contends that this appeal is frivolous and asks us to assess a penalty against the father pursuant to Rule 32, M.R.App.Civ.P., or, alternatively, to award her attorney fees pursuant to section 40-4-110, MCA, because she cannot afford to pay her own attorney. She did not make this request at the trial level, and we are not inclined to act favorably on this request here. We cannot ignore the fact that it was the mother who moved

-4-

to North Carolina without first getting a change in the visitation privileges, and thus forced the father to initiate the present litigation. Essentially, he had no other choice. Under the circumstances, the mother is not in an equitable position to argue that the father should pay her attorney fees.

The order refusing to grant custody to the father is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-5-